91 S.W.3d 865 (2002)
In the Interest of T.D.C., A Child.
No. 2-00-356-CV.
Court of Appeals of Texas, Fort Worth.
November 21, 2002.
*867 David R. Sweat, Arlington, for appellant.
Chris Harris & Associates, P.C., Chris Harris, David L. Cook, Arlington, for appellee.
PANEL A: CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

OPINION ON REHEARING
JOHN CAYCE, Chief Justice.
We withdraw our opinion and judgment issued on July 11, 2002, and substitute the following in their place.
Appellant Tony Wayne Cook II appeals from the trial court's order awarding appellee Stoney Short primary managing conservatorship of Tony's child with the exclusive right to establish the child's permanent residence, the right to receive and disburse child support benefits, and the right to make educational decisions for the child. Tony is the biological father of T.D.C., and Stoney is a nonparent. Tony also challenges the trial court's award of attorney's fees to Stoney. We will reverse and remand.
I. Factual and Procedural Background
Appellant Tony Wayne Cook II and Martina Kaye Short are the biological parents of T.D.C. Tony and Martina were not married when T.D.C. was born. On March 3, 1995, when T.D.C. was eight months old, Martina filed a petition to establish paternity in Tony in the 249th District Court of Johnson County. On *868 December 20, 1995, the Johnson County district court entered an order that Tony was T.D.C.'s father. The court appointed Martina as managing conservator with the exclusive right to determine T.D.C.'s primary residence, and Tony was named possessory conservator. The court also changed T.D.C.'s last name from "Short," the last name of Martina's ex-husband, Stoney Short, to Tony's last name, "Cook."
Although Tony was given visitation rights to T.D.C., Martina soon made it clear that she did not want Tony to have a parental relationship with T.D.C., and she made it very difficult for him to visit T.D.C. Between December 20, 1995 and February 17, 1996, Tony attempted on several occasions to arrange times to visit T.D.C., but Martina either did not respond to his requests or denied them. On December 30, 1995, Tony filed charges against Martina for interference with child custody, but later dropped the charges because Martina permitted him to visit T.D.C. After this visit, Martina again refused Tony's subsequent requests to visit T.D.C. Tony's work schedule with the police department had changed, making the ordered Saturday visits impossible. Martina refused to voluntarily alter the visitation schedule, and although Tony contacted the attorney general's office for assistance in enforcing his visitation rights, Mrs. Gray told him "that [this] was the schedule they were going to stay with until my son reached three years old." According to Tony, Martina "said that she didn't know why [Tony] bothered. [T.D.C.'s] not going to know [him] as the father. Andhe never will know [Tony] as his father.... [S]he was going to tell him that ... Stoney's his father." Martina also attempted to change T.D.C.'s last name back to Short.
From February 17, 1996 through July 6, 1998, Tony had no contact with T.D.C. He stated that he did not try to force his way into Martina's and T.D.C.'s lives because he thought it would be detrimental to the child. During this time, Tony believed that T.D.C. lived with Martina and never received any information to the contrary. Although Tony did not insist on maintaining his visitation rights in the face of Martina's refusal to allow him to see T.D.C., Tony continued to pay child support and insurance for T.D.C., even when T.D.C. was in Stoney's custody.[1]
In May 1997, Stoney married Julie Dawn Short. Martina relinquished control of T.D.C. to Stoney in June 1997.[2] Neither *869 Martina nor Stoney ever informed Tony that T.D.C. began living exclusively with Stoney and Julie in June 1997. Tony first learned that T.D.C. was living with Stoney when Stoney filed his petition for modification in Johnson County district court on May 27, 1998, requesting that he be appointed sole managing conservator for T.D.C. In response to Stoney's petition, Tony filed a counter-petition to modify the parent-child relationship, asking that he be named managing conservator.
On September 3, 1998, the Johnson County district court made an oral pronouncement giving Tony specific periods of possession and entered a temporary injunction to preserve the status quo. This oral pronouncement was reduced to a written order and signed on November 23, 1999.
On July 7, 1999, Stoney filed a petition for writ of habeas corpus in the Johnson County district court, alleging he had the right of possession of T.D.C. and that T.D.C. was illegally restrained by Tony. Tony allegedly had refused to return T.D.C. to Stoney after visiting with him over the Fourth of July weekend in 1999. The district court denied Stoney's petition, and on July 23, 1999, Stoney and T.D.C.'s ad litem attorney agreed to the entry of a temporary order that appointed Tony as temporary sole managing conservator with the right to determine the primary residence of the child. T.D.C. then began living with Tony.
On October 6, 1999, the case was transferred from Johnson County to the 233rd District Court of Tarrant County pursuant to a motion to transfer filed by Martina on the grounds that T.D.C. had been a resident of Tarrant County for six months, and because none of the other parties to the proceedings resided in Johnson County. Following the transfer, and three months after Stoney voluntarily agreed to allow Tony to be appointed temporary managing conservator of T.D.C., Stoney filed a motion requesting the Tarrant County district court to reverse the previous rulings of the Johnson County trial court.
An associate judge held a hearing on Stoney's motion to reconsider the petition for habeas relief on November 22, 1999. The associate judge ordered that T.D.C. be returned to Stoney and restricted Tony's possession to the terms of the September 3, 1998 oral pronouncement of the Johnson County district court. Tony appealed the associate judge's ruling to the presiding judge of the 233rd District Court.
In the meantime, Tony also filed an application for habeas corpus relief to enforce his right of possession under the July 23, 1999 temporary order of the Johnson County district court, alleging Stoney was illegally restraining T.D.C. from visiting him. After a hearing, the associate judge set aside the temporary order and denied Tony's habeas corpus application. Tony immediately appealed these rulings to the Tarrant County district court. On December 20, 1999, the Tarrant County district court heard the appeals, set aside both Johnson County orders, denied Tony's application for habeas corpus relief, and set a new possession schedule for Tony.
The case proceeded to trial on May 3, 2000. After two days of testimony,[3] the trial court rendered judgment appointing Stoney and Tony as joint managing conservators and granting Stoney the exclusive right to make decisions regarding T.D.C.'s residency and education and disbursement of child support payments. *870 Martina was removed as managing conservator and designated as a possessory conservator, with possession left to the discretion of Stoney. Tony's rights under the judgment include all rights and duties normally associated with parenthood, except the right to establish T.D.C.'s primary residence and the right to make educational decisions on T.D.C.'s behalf. Tony is also required to make child support payments to Stoney, which Stoney is authorized to manage and disburse "for the benefit of the child."

II. The Parental Presumption
In Tony's first issue, he argues the trial court should have applied the parental presumption at the modification proceeding and awarded him primary managing conservatorship. See Tex. Fam.Code Ann. § 153.131(a) (Vernon 2002). He contends the trial court erred in appointing Stoney primary managing conservator with the exclusive right to establish T.D.C.'s residence, without first finding that it was not in T.D.C.'s best interests to have Tony appointed in that capacity because it significantly impairs the child's physical health and emotional development. See Phillips v. Beaber, 995 S.W.2d 655, 660 (Tex.1999) (holding exclusive right to determine primary residence of child is equivalent of having "custody" of child).
The natural right existing between parents and their children is of constitutional dimensions. Holick v. Smith, 685 S.W.2d 18, 20 (Tex.1985); In re G.M., 596 S.W.2d 846, 846 (Tex.1980). This natural parental right has been characterized as "essential," a "basic civil right[] of man," and "far more precious ... than property rights." Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972); Holick, 685 S.W.2d at 20. "[T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a `better' decision could be made." Troxel v. Granville, 530 U.S. 57, 72-73, 120 S.Ct. 2054, 2064, 147 L.Ed.2d 49 (2000). There is a legal presumption that awarding custody to a parent is in the best interests of the child. In re V.L.K., 24 S.W.3d 338, 341 (Tex.2000). The basis for the parental presumption is the "natural affection usually flowing between parent and child." Id.
The legislature codified the presumption in chapter 153 of the family code, which governs original custody determinations:
[U]nless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.
TEX. FAM.CODE ANN. § 153.131(a). In an original custody suit, a nonparent can be appointed as joint managing conservator only if the nonparent rebuts the parental presumption. In re De La Pena, 999 S.W.2d 521, 527-28 (Tex.App.-El Paso 1999, no pet.). Thus, a nonparent cannot be appointed as managing conservator over a parent unless the nonparent shows that appointment of the parent would significantly impair the child's health or development. Id.; see also V.L.K., 24 S.W.3d at 341. Furthermore, in order to rebut the parental presumption, chapter 153 requires a nonparent to show that the natural parent has "voluntarily relinquished actual care, control, and possession of the child to a nonparent" for one year or more and the appointment of a nonparent as managing conservator is in the best interest of the child. TEX. FAM. *871 CODE ANN. § 153.373; V.L.K., 24 S.W.3d at 342. A court's primary consideration in any conservatorship case, however, shall always be the "best interest of the child." Tex. Fam.Code Ann. § 153.002.
After a court makes an original custody determination, a party may move to modify that determination. See id. § 156.002; V.L.K., 24 S.W.3d at 342. At the time the trial court in this case made its custody determination, section 156.101 allowed a trial court to modify conservatorship under the following conditions:
(a) The court may modify an order that designates a sole managing conservatorship of a child of any age if:
(1) the circumstances of the child, sole managing conservator, possessory conservator, or other party affected by the order have materially and substantially changed since the date of the rendition of the order; and
(2) the appointment of the new sole managing conservator would be a positive improvement for the child.
Act of May 25, 1995, 74th Leg., R.S., ch. 751, § 47, 1995 Tex. Gen. Laws 3888, 3905 (amended 2001) (current version at Tex. Fam.Code Ann. § 156.101(a) (Vernon 2002)). Accordingly, any person who seeks to modify an existing custody order must show changed circumstances and that modification would be a positive improvement for the child. V.L.K., 24 S.W.3d at 342.
Chapter 156 does not provide for a parental presumption in modification suits as in original custody suits. Id. at 342-43; see also Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787, 790 (1955) (holding parental presumption does not control in modification suits). According to the Supreme Court of Texas, the public policy behind this statutory distinction is that "a change of custody disrupts the child's living arrangements and the channels of a child's affection, [so] a change should be ordered only when the trial court is convinced that the change is to be a positive improvement for the child." Taylor, 276 S.W.2d at 790; see also V.L.K., 24 S.W.3d at 343 (stating appellate courts have recognized the policy concern that a trial court should not change custody unless it is a positive improvement because of the child's need for stability).
Because the proceedings below involved the modification of an original custody decree, we hold the parental presumption does not apply in this case. Therefore, the trial court was not required to find that appointment of Tony as primary managing conservator would significantly impair the child's physical health and emotional development before appointing Stoney primary managing conservator with the exclusive right to establish T.D.C.'s residence. See Act of May 25, 1995, 74th Leg., R.S., ch. 751, § 47, 1995 Tex. Gen. Laws 3888, 3905 (amended 2001) (current version at Tex. Fam.Code Ann. § 156.101(a) (Vernon 2002)). We overrule issue one.[4]

III. Positive Improvement
In Tony's third issue, he argues the trial court abused its discretion because there was legally and factually insufficient evidence to support the trial court's finding that the appointment of Stoney as primary managing conservator would be a positive improvement for and in the best interests of T.D.C. Tony does not challenge the trial *872 court's finding that his and T.D.C.'s circumstances have materially and substantially changed.
A. Standards of Review
We review the trial court's modification of a joint managing conservatorship under an abuse of discretion standard. Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex.1982); In re Moss, 887 S.W.2d 186, 188 (Tex.App.-Texarkana 1994, no writ). A trial court abuses its discretion if it acts arbitrarily and unreasonably or without reference to guiding principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.1985), cert. denied, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).
In our review of modification under an abuse of discretion standard, legal and factual sufficiency are not independent grounds of error, but are relevant factors in deciding whether the trial court abused its discretion. D.R. v. J.A.R., 894 S.W.2d 91, 95 (Tex.App.-Fort Worth 1995, writ denied) (op. on reh'g); see In re D.S., 76 S.W.3d 512, 516 (Tex.App.-Houston [14th Dist.] 2002, no pet.); Norris v. Norris, 56 S.W.3d 333, 338 (Tex.App.-El Paso 2001, no pet.). In determining whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we engage in a two-pronged inquiry: (1) Did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion? D.S., 76 S.W.3d at 516; Norris, 56 S.W.3d at 338; see Lindsey v. Lindsey, 965 S.W.2d 589, 592 (Tex.App.-El Paso 1998, no pet.). The traditional sufficiency review comes into play with regard to the first question. Lindsey, 965 S.W.2d at 592. We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. Id.
In this case, we have been called upon to determine whether the trial court abused its discretion in appointing Stoney as primary managing conservator because the evidence is insufficient to support the trial court's finding that the appointment of Stoney would be a positive improvement for T.D.C. If we determine insufficient evidence exists to support this finding, we must then decide whether the trial court appropriately exercised its discretion by appointing Stoney as primary managing conservator based on a finding unsupported by sufficient evidence. See id. at 592-93.
In determining a "no-evidence" issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex.2001); Cont'l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex.1996); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). Anything more than a scintilla of evidence is legally sufficient to support the finding. Cazarez, 937 S.W.2d at 450; Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex.1996).
An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.1965). We are required to consider all of the evidence in the case in making this determination. Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).
B. Positive Improvement
*873 The trial court may modify an order that designates a sole managing conservator of a child of any age if:
(1) the circumstances of the child, sole managing conservator, possessory conservator, or other party affected by the order have materially and substantially changed since the date of the rendition of the order; and
(2) the appointment of the new sole managing conservator would be a positive improvement for the child.
Act of May 25, 1995, 74th Leg., R.S., ch. 751, § 47, 1995 Tex. Gen. Laws 3888, 3905 (amended 2001) (current version at Tex. Fam.Code Ann. § 156.101(a) (Vernon 2002)).[5] As with all suits regarding conservatorship of a child, "[t]he best interest of the child shall always be the primary consideration of the court" in a proceeding to change managing conservators. See Tex. Fam.Code Ann. § 153.002; In re M.R., 975 S.W.2d 51, 53 (Tex.App.-San Antonio 1998, pet. denied); In re Marriage of Chandler, 914 S.W.2d 252, 253-54 (Tex. App.-Amarillo 1996, no writ).[6]
The family code does not define or set out the relevant factors to be considered when determining whether a requested change is in the best interest of a child. In other contexts involving a "best interest" analysis, Texas courts have applied what are commonly referred to as the Holley factorsa nonexhaustive list of considerations for determining a minor's best interest. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976) (enumerating list of factors to ascertain best interest of child in parental termination context); see also In re Doe 2, 19 S.W.3d 278, 282 (Tex.2000) (applying Holley factors for best interest determination in judicial bypass provision of parental notification act); Turner, 47 S.W.3d at 767 (applying best interest analysis to determine whether modification would be a positive improvement for child).
The factors that may be considered in determining the issue of positive improvement include, but are not limited to: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; and (3) the emotional and physical danger to the child now and in the future. Holley, 544 S.W.2d at 371-72. The need for permanence is a compelling consideration in determining the child's present and future physical and emotional needs. In re S.H.A., 728 S.W.2d 73, 92 (Tex.App.-Dallas 1987, writ ref'd n.r.e.).
We conclude there is more than a scintilla of evidence supporting the trial court's finding that the appointment of Stoney as T.D.C.'s primary managing conservator would be in T.D.C.'s best interest. The evidence shows that T.D.C. knew Stoney as his father before he began to have regular contact with Tony and that T.D.C. had lived with Stoney most of his life. We hold this evidence is legally sufficient to support a finding that T.D.C.'s present and future emotional need for permanence would be served by the appointment of Stoney as T.D.C.'s primary managing conservator.
*874 We further conclude, however, that the evidence is factually insufficient to support the trial court's finding on the issue of positive improvement.[7] When we determine that evidence is factually insufficient, our opinion must detail the evidence relevant to the issue in consideration and clearly state why the evidence supporting the issue is factually insufficient or is so against the great weight and preponderance of other evidence as to be manifestly unjust, why it shocks the conscience, or why it clearly demonstrates bias. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g). Further, our opinion must state in what regard the contrary evidence greatly outweighs the evidence in support of the finding. Id.; see also Lofton v. Tex. Brine Corp., 720 S.W.2d 804, 805 (Tex.1986).
The evidence shows the following:
1. Desires of T.D.C.
The uncontroverted evidence at trial shows that T.D.C. does not want to live with Stoney. In a tape-recorded conversation made by Tony, T.D.C. asked, "How come the Judge said I have to live with Stoney?" T.D.C. also stated, "I don't want to live with Stoney." Lawanda, Tony's wife, also testified that T.D.C. indicated he wants to live with her and Tony. There is no contrary evidence showing that T.D.C. desires to live with Stoney and his children. Thus, if T.D.C.'s wishes are to be considered, then the uncontroverted evidence of his desires clearly weighs against placing him with Stoney. See Tex. Fam. Code Ann. § 153.009(b) (authorizing consideration of child's desires).
2. T.D.C.'s Present and Future Emotional and Physical Needs
The evidence of Stoney's capability of providing for T.D.C.'s present and future emotional and physical needs is greatly outweighed by the evidence showing that T.D.C.'s present and future emotional and physical needs would not be positively improved by appointing Stoney as his primary managing conservator. The evidence shows that Stoney took affirmative steps to mislead others about the nature of his relationship with T.D.C. and to keep Tony from having direct involvement in his son's life, all of which is detrimental to T.D.C.'s need for a physical and emotional relationship with Tony.
In June 1997, Martina relinquished control of T.D.C. to Stoney. Stoney testified that while T.D.C. lived with him T.D.C. became very close to his wife Julie Short. T.D.C. has lived with his two maternal brothers and sister for almost his entire life and considers Stoney's and Julie's other children to be his siblings. There is evidence in the record, however, showing that both Martina and Stoney made a deliberate effort to keep T.D.C. from forming an emotional bond with Tony and to keep Tony from providing parental care to T.D.C. While Stoney testified that T.D.C. called him and no one else "daddy" before Tony began seeing T.D.C. again, the evidence shows that the reason for this is that Stoney and Martina both led T.D.C. to believe that Stoney was his real father. Martina also threatened Tony that she would ensure T.D.C. knew Stoney as his father, and she attempted to carry out this threat by thwarting Tony's attempts to visit T.D.C. when he was in Martina's custody. Moreover, when T.D.C. moved in with Stoney, neither he nor Martina ever *875 informed Tony about the change in living arrangements.
Although Stoney testified that he promoted a relationship between T.D.C. and Tony "since the beginning," and that Tony has cooperated with him on his visitation rights to T.D.C., Stoney's desire to promote a relationship with Tony began only after Stoney filed a petition to modify the parent-child relationship. Before that time, Stoney never even told Tony that he had possession of T.D.C., and Tony only found out that T.D.C. was living with Stoney when Stoney filed his petition to modify. Stoney did not include Tony as a contact person at T.D.C.'s school or on T.D.C.'s medical records. Instead, he represented that he was T.D.C.'s father. Stoney did not inform Tony that Martina was having drug problems while T.D.C. was still living with her.
3. Present and Future Emotional and Physical Danger to T.D.C.
The overwhelming weight of the evidence also shows that appointing Stoney as primary managing conservator could be physically and emotionally dangerous to T.D.C. While living with Stoney, there has been the potential for T.D.C. to be subjected to an environment where guns are drawn, adults hit each other, and adult supervisors are arrested in front of children. This hostile environment could be physically and emotionally dangerous to T.D.C. and would not constitute a positive improvement for T.D.C.
Julie's ex-husband Brent Dalley frequently visits his children at Stoney and Julie's house while T.D.C. is there. From April 1996 through April 1997, Julie and Dalley were involved in divorce and child custody proceedings regarding their children. In October 1996, Dalley displayed a gun to Stoney in a threatening manner and cocked it in the presence of the children. While police were investigating this incident, Dalley drove "a one-ton Ford water truck at an excessive rate of speed directly at the parked vehicle which was occupied by [Julie], Stoney Short and the children." Both Julie and Stoney verified by affidavit that Dalley was driving in a threatening manner and that he nearly struck the car occupied by them and the children. On another occasion, Dalley hit Julie in the face with his elbow during an exchange of the children. According to a motion for protective order filed by Julie during the divorce proceedings, Dalley had threatened her on several additional occasions. Dalley has also had several arguments with Stoney in the presence of the children. Dalley testified that he often saw T.D.C. at Stoney and Julie's house around the same time as the divorce proceedings.
Stoney's brother, Scott, is also a frequent visitor at Stoney's residence. Scott has been arrested on drug charges and was convicted for failing to identify himself to a police officer. On one occasion, Scott was arrested while he was in possession of T.D.C. Stoney, however, continues to leave T.D.C. in Scott's possession; he testified at trial that he was not concerned about his brother's criminal record and that he has probably left T.D.C. with Scott since the time he was arrested in T.D.C.'s presence.
Tony testified that he saw signs of physical abuse on T.D.C., which Tony stated were caused by one of the six other children living with Stoney and Julie. For example, Tony testified that T.D.C. once had scratches on his face and that T.D.C. had also been bitten on the back. Both injuries were allegedly inflicted by Stoney's children. Pictures taken by Tony of these injuries were admitted into evidence at trial. There is no evidence of any potential physical or emotional danger to T.D.C. if he lives with Tony.
*876 In sum, while there is some evidence that shows that T.D.C.'s need for permanence may be satisfied by leaving him under Stoney's primary managing conservatorship, the evidence supporting the trial court's finding that the appointment of Stoney would be a positive improvement for T.D.C. is overwhelmingly outweighed by evidence showing it would not be a positive improvement for T.D.C. to have Stoney serve as T.D.C.'s primary managing conservator. Because positive improvement is the most important consideration of the trial court in determining the issue of whether the prior conservatorship order should be modified by appointing a new primary managing conservator, we conclude that the trial court abused its discretion in appointing Stoney as the primary managing conservator based on a positive improvement finding that is contrary to the overwhelming weight of the evidence.[8] We sustain Tony's third issue.

IV. Attorney's Fees
In Tony's fourth through fifth issues, he challenges the trial court's award of attorney's fees to Stoney. The "Order in Suit Affecting the Parent-Child Relationship" awards Stoney $6,200 in attorney's fees for "prosecuting the Writ of Habeas Corpus and the Motion to Compel Discovery." Under section 106.002 of the family code, the trial court may award attorney's fees. Tex. Fam.Code Ann. § 106.002(a). The trial court's award of attorney's fees in a suit affecting the parent-child relationship will not be disturbed absent an abuse of discretion. Bruni v. Bruni, 924 S.W.2d 366, 368 (Tex.1996).
Because the trial court's judgment on remand may be significantly different in light of our decision today, we reverse the trial court's award of attorney's fees to give it an opportunity to reconsider the award of attorney's fees when it renders a new judgment. See id. at 368-69. Accordingly, we do not reach the merits of Tony's fourth and fifth issues.

V. Discovery
In his sixth issue, Tony argues that the trial court erred in granting Stoney's motion to compel the production of a chronological set of notes prepared by Tony and his wife "in anticipation of this litigation to assist their attorneys." The notes are a written chronology of the events regarding the relationship between Tony and Martina, the custody disputes between Tony and Martina and Tony and Stoney, and the attempts Tony made to visit T.D.C. Tony asserts that the trial court's error was harmful because the notes were introduced into evidence at trial against Tony. Tony did not object, however, to the chronology being introduced into evidence at trial and told the trial court he had no objection to it being offered into evidence. Thus, we fail to see how Tony was harmed, and Tony waived *877 error by failing to object to the chronology being admitted into evidence. See Tex.R.App. P. 33.1(a); Tex.R. Evid. 103; State Bar v. Evans, 774 S.W.2d 656, 658 n. 6 (Tex.1989); cf. Clark v. Trailways, Inc., 774 S.W.2d 644, 647 (Tex.1989) (holding even though trial court should not have admitted witness's testimony due to plaintiffs' failure to supply defendants with witness's address as requested in interrogatories, defendants failed to preserve complaint as to admission of witness's testimony by failing to object when testimony was offered at trial), cert. denied, 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1028 (1990). We overrule Tony's sixth issue.

VI. Conclusion
Because we hold that the trial court abused its discretion in appointing Stoney primary managing conservatorship of T.D.C. based on factually insufficient evidence that the appointment would be a positive improvement for T.D.C., we reverse the trial court's judgment and remand this case to the trial court for a new trial.
LIVINGSTON, J. filed a dissenting opinion.
TERRIE LIVINGSTON, Justice, dissenting.
I respectfully disagree with the majority's conclusion that the evidence was factually insufficient to show that appointing Stoney as primary managing conservator would be a positive improvement for T.D.C. While the majority correctly sets forth the standard of review for factual sufficiency challenges and acknowledges the abuse-of-discretion standard for review on appeal of modification orders, I do not believe the majority correctly applied the abuse-of-discretion standard.

Factual Sufficiency and Abuse of Discretion
When considering a factual sufficiency challenge, a court of appeals must consider and weigh all of the evidence, not just the evidence that supports the finding. Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998). We can set aside a finding of fact only if it is so contrary to the overwhelming weight of the evidence that the finding is clearly wrong and unjust. Id. at 407. A court of appeals is not a fact finder and may not substitute its judgment for that of the fact finder, even if the evidence would clearly support a different result. Id.
When reversing a trial court's judgment for factual insufficiency, a court of appeals must detail all the evidence relevant to the issue and clearly state why the fact finding is factually insufficient or so against the great weight and preponderance of the evidence that it is manifestly unjust. Id.; Ellis County State Bank v. Keever, 888 S.W.2d 790, 794 (Tex.1994). The opinion must explain how the contrary evidence greatly outweighs the evidence supporting the finding. Ellis, 971 S.W.2d at 407; Keever, 888 S.W.2d at 794.
However, when we review a suit modifying conservatorship, we are to apply an abuse-of-discretion standard to modification orders. Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex.1982). Under an abuse-of-discretion standard, legal and factual sufficiency challenges are not independent grounds of error, but are relevant factors in assessing whether a trial court abused its discretion. Compare In re H.S.N., 69 S.W.3d 829, 831 n. 1 (Tex.App.-Corpus Christi 2002, no pet.); In re A.P.S., 54 S.W.3d 493, 495 (Tex.App.-Texarkana 2001, no pet.); In re J.E.P., 49 S.W.3d 380, 386 (Tex.App.-Fort Worth 2000, no pet.); Ditraglia v. Romano, 33 *878 S.W.3d 886, 889 (Tex.App.-Austin 2000, no pet.); McGuire v. McGuire, 4 S.W.3d 382, 387 n. 2 (Tex.App.-Houston [1st Dist.] 1999, no pet.); D.R. v. J.A.R, 894 S.W.2d 91, 95 (Tex.App.-Fort Worth 1995, writ denied) (op. on reh'g), with In re D.S., 76 S.W.3d 512, 516 (Tex.App.-Houston [14th Dist.] 2002, no pet.); Norris v. Norris, 56 S.W.3d 333, 338 (Tex.App.-El Paso 2001, no pet.) (applying a two-prong analysis to sufficiency challenges in modification suits). We have, in the past, even waived these points of review when improperly raised under legal and factual sufficiency challenges. D.R., 894 S.W.2d at 95; Wood v. O'Donnell, 894 S.W.2d 555, 556 (Tex. App.-Fort Worth 1995, no writ.).
Because appellant has raised the trial court's abuse of discretion in concluding that appointment of Stoney is in the best interest/positive improvement for the child, I agree we should address his contention. However, once we have reviewed the evidence for legal and factual sufficiency, we must determine "whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable." D.R., 894 S.W.2d at 95 (citing Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990)). In D.R. we also said that "[a]n abuse of discretion does not occur where the trial court bases its decisions on conflicting evidence." Id. (citations omitted). Even more importantly, we also said, "[A]n abuse of discretion does not occur as long as some evidence of a substantive and probative character exists to support the trial court's decision." Id. (citing Holley v. Holley, 864 S.W.2d 703, 706 (Tex.App.-Houston [1st Dist.] 1993, writ denied)). Thus, I believe the sufficiency of the evidence should be tested primarily under the abuse-of-discretion standard as opposed to just reviewing factual and legal sufficiency as the sole elements to this type of abuse-of-discretion review. The majority leaps to the conclusion that because it believes there is factually insufficient evidence to support the positive improvement/best interest finding, there is automatically an abuse of discretion. It provides no analysis of how the court abused its discretion despite the conflicting evidence.
In conducting an abuse-of-discretion review of the evidence, we should look to the Holley factors to determine the positive improvement/best interest prong in a modification suit. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976). Under the Holley factors we look not only at the three factors identified by the majority opinion, but we may also consider the other six Holley factors if applicable. Additionally, we may consider other relevant factors as the Holley list is nonexhaustive. Id.
The nine factors identified in Holley include: (1) the desires of child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the plans for the child by the party seeking the change; (5) the stability of the home or the proposed placement; (6) the parental abilities of the individuals seeking custody; (7) the programs available to assist these individuals and to promote the best interest of the child; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. Id. The Holley factors are relevant for determination of what would be the best interest/positive improvement for the child. See Majority Op. at 873 & n. 6 (citing Turner v. Turner, 47 S.W.3d 761, 767 (Tex.App.-Houston [1st Dist.] 2001, no pet.)).
In this case the trial court found:

*879 1. The circumstances of [T.D.C.] have materially and substantially changed since the rendition of the Paternity Order dated December 20, 1995.
2. The circumstances of [MARTINA] have materially and substantially changed since the rendition of the Paternity Order dated December 20, 1995.
3. The appointment of [STONEY], a non-parent, and [TONY], a parent, as joint managing conservators of [T.D.C.] would be a positive improvement for and in the best interest of [T.D.C.].
4. The designation of [STONEY] as the joint managing conservator with the exclusive right to establish the child's primary residence in Tarrant County, Texas, and to make educational decisions for the child would be a positive improvement for and in the best interest of [T.D.C.].
5. [STONEY] had actual care, custody, control and possession of [T.D.C.] for a period exceeding six months immediately preceding the filing of the suit.
....
7. [MARTINA] voluntarily surrendered actual possession, care, custody and control of [T.D.C.] to [STONEY] on or about June 1, 1997.
8. [TONY] relinquished actual care, control and possession of [T.D.C.] to [MARTINA] and [STONEY] on or about February 17, 1996, and this relinquishment continued unabated, until [TONY] requested appointment as [T.D.C.]'s managing conservator on July 6, 1998.
9. [TONY] had reason to believe, and did believe, that [MARTINA] intended for [STONEY] to assume the role of [T.D.C.]'s father at least as early as February 17, 1996, and [TONY] voluntarily agreed and acquiesced to [STONEY] actin [sic] as [T.D.C.]'s father until July 6, 1998, thereby relinquishing all of [TONY]'s rights to actual care, control and possession of [T.D.C.] to [STONEY] for that period of time.
The trial court concluded:
1. [STONEY] and [TONY] should be named joint managing conservators of the child with the rights and duties stated in the judgment, including [STONEY] having the exclusive rights to establish the child's primary residence in Tarrant County, Texas, and to make educational decisions for the child.
....
3. This proceeding is governed by Chapter 156 of the Texas Family Code and the parental preference therefore does not apply.
In our review of the factual sufficiency of these findings, we must consider all the evidence and if concluding the evidence is factually insufficient we must state why it is insufficient or so against the great weight and preponderance as to be manifestly unjust, why it shocks the conscience, or why it demonstrates bias. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g).
The facts show that T.D.C. was born on June 28, 1994. Eight months later Martina had to file a petition in court to establish that Tony was T.D.C.'s father. At the conclusion of the paternity hearing, Tony was named the child's biological father and possessory conservator and ordered to pay child support of $229 per month to Martina, the managing conservator, beginning on January 1, 1996. The trial court found that Tony had not provided support for T.D.C. from birth until the hearing and awarded the attorney general $2,501 in *880 retroactive child support under family code chapter 231. Tex. Fam.Code Ann. ch. 231 (Vernon 2002). Tony was also granted limited visitation while the child was an infant, expanded to standard visitation when the child reached three. The trial court signed this order on December 20, 1995.
The majority acknowledges that Tony had no contact with T.D.C. from February 17, 1996 until July 6, 1998. At the time of trial in May of 2000, nearly four years later, the trial court again found Tony to be in arrearages to Martina in the amount of $1,950.[1] I now turn to a discussion of the Holley factors.

The Holley Factors
The Desires of the Child.
The majority concludes, based upon one surreptitiously recorded conversation, that T.D.C. did not want to live with Stoney and that this evidence is uncontroverted. As appellee points out in his motion for rehearing, Tony recorded the conversation with T.D.C. one week after T.D.C. had been moved back to Stoney's after the trial court's reconsideration of Stoney's petition for habeas corpus. Tony admitted that he and his wife, Lawanda, had been discussing the custody case with T.D.C. More importantly Lawanda testified that T.D.C. has said he wanted to live with both Stoney and Tony. Thus, the evidence of the child's desires are not uncontroverted as stated by the majority. The child desires to live with both of his fathers.
The Emotional and Physical Needs of the Child Now and in the Future and Parental Abilities of Individuals Seeking Custody.
The second Holley factor gives consideration to the emotional and physical needs of the child now and in the future. Holley, 544 S.W.2d at 371-72. The sixth Holley factor, the parental abilities, is closely tied to this factor so I will discuss them together. I believe there are two clear and distinct bases for this factor to weigh in Stoney's favor.
First, the need for permanence is "a compelling consideration." In re S.H.A., 728 S.W.2d 73, 92 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). This court has previously stated that "it is a positive improvement, as a matter of law, for the child's domiciliary status to no longer be in limbo." Bingham v. Bingham, 811 S.W.2d 678, 681 (Tex.App.-Fort Worth 1991, no writ) (emphasis added). The need for permanence is the paramount consideration for the child's present and future physical and emotional needs. Dupree v. Tex. Dep't of Protective & Regulatory Servs., 907 S.W.2d 81, 87 (Tex.App.-Dallas 1995, no writ). This fact alone, is enough to support the trial court's appointment of Stoney as the joint managing conservator with primary rights. T.D.C. had always known Stoney as his father. Since T.D.C. had known Stoney as his father and because he had lived with Stoney, Martina, and their other children virtually all his life, this factor favors greater emotional benefit to T.D.C. by living with Stoney. He had developed bonds with the other children he had grown up with, which could also affect his emotional needs.
Secondly, while the voluntary relinquishment of the child is not a sole factor in this case because this is a modification as opposed to a termination, voluntary relinquishment must be of paramount importance in the evaluation of the child's emotional needs. Compare Tex. Fam.Code *881 ANN. § 153.373 (Vernon 2002) with Tex. Fam.Code Ann. § 156.101 (Vernon 2002). In this case the trial court found that Tony voluntarily relinquished T.D.C. to Martina and Stoney in February 1996. This was just two months after the court had first established paternity in Tony and ordered Tony to pay child support beginning in January 1996. Tony did not try to exercise his visitation rights until he responded to Stoney's suit to change managing conservatorship from Martina to Stoney on July 6, 1998, over two years later. The facts further show that while Stoney's suit was pending Stoney worked with Tony to set up some visitations with T.D.C.
In September of 1998 Stoney and Tony reached a temporary settlement giving Stoney primary rights over T.D.C. and giving Tony visitation rights. Tony was given specified visitation rights that he exercised for a seven month period. However, during one such visit, over the July 4, 1998 holiday, Tony refused to return T.D.C. to Stoney, despite the agreed orders. Stoney had to file a writ of habeas corpus to obtain T.D.C.'s return. During the pendency of Stoney's and Tony's suit to modify, the Johnson County court entered additional temporary orders, this time naming Tony as Temporary Managing Conservator and Stoney as Temporary Possessory Conservator on July 23, 1999 despite his order previously granting Stoney's writ of habeas corpus on July 7, 1999.[2] Stoney filed a motion to reconsider the denial of habeas corpus with the Tarrant County court on October 28, 1999, seeking again to enforce his rights under the September 3, 1998 agreement he and Tony had reached. On November 22, 1999, the Tarrant County court granted Stoney's writ of habeas corpus and reinstated the parties' September 3, 1998 agreement by written order dated November 23, 1999.
I believe this is more than factually sufficient evidence to show that the emotional and physical needs would best be met by the party who had raised the child and supported the child, as opposed to the party who originally denied paternity, relinquished the child two months after paternity was established, and made no attempt to contact or see the child for the next thirty months. These same facts also substantially weigh in Stoney's favor regarding his stability over Tony's.
Emotional and Physical Danger to the Child.
Again, I believe the emotional danger to the child is greater if placed with a party who has chronically failed to establish a relationship with the child, failed to continuously support the child, and who has refused to return the child at times ordered by the court. As to physical danger the majority cites to a few incidents, which are quite serious, but apparently did not even occur at Stoney's home, but occurred at his relative's home when T.D.C. was not present in 1996. As to alleged physical abuse, there is no evidence indicating any abuse other than some photographs taken by Tony that were just as likely indicating normal childhood injuries. No one testified that Stoney had ever abused T.D.C. and neither Tony nor his wife, Lawanda, ever reported any abuse.
Plans for Child by the Party Seeking the Change.
Further, Tony was originally named a possessory conservator in Martina's suit to establish paternity but made no attempt to *882 see T.D.C. from February of 1996 until July of 1998. This is some evidence of inability to follow through with plans for the child. Contrarily, Stoney has shown continuous ability to provide for the child's welfare and education. I believe this factor weighs in Stoney's favor.
Stability of the Proposed Home.
I also believe this Holley factor weighs heavily in Stoney's favor. Stoney had actually already proven he could care for T.D.C. He had continually been the primary caregiver for T.D.C. since Martina left T.D.C. with him in June of 1997. He had also shown a willingness and ability to work with Tony as evidenced by his abiding by the visitation schedules. Further, Stoney had never abandoned T.D.C. as Tony had and Stoney had never refused to follow court orders regarding visitation as Tony had.
Programs Available to Assist the Individuals Seeking Custody.
No evidence was admitted regarding this factor so it does not apply.
Acts or Omissions of a Parent Which May Indicate that the Existing Parent-Child Relationship Is Not Proper and Any Excuse for the Acts or Omissions of the Parent.
In connection with this Holley factor, Tony conceded he did not exercise the visitation awarded him via the paternity order. He understood that he had to complete each level of visitation before he could reach the next level of increased visitation. Tony's only excuse was that Martina required him to visit T.D.C. at her house for the supervised visits. He had a few other conversations regarding his visitation but never attempted further contact after the February 17, 1996 phone conversation. He admits he knew that Stoney was watching after T.D.C. He said he knew where Martina lived the entire time. Further, although Tony had primary custody of T.D.C. from July 1999 until November 1999 he never bothered to change his child support requirements; he just stopped paying them to Martina.
Also, at T.D.C.'s birth, Tony refused to give Martina medical history information despite a concern that T.D.C. might have had cystic fibrosis until another family member called him and asked again later.
The evidence also showed that Tony refused to attend a parent-teacher conference required by T.D.C.'s teacher because Stoney and Julie were to be there too. Instead, he went on another day. I believe this is more than sufficient evidence to show that this Holley factor weighs in Stoney's favor.

Conclusion
I believe all the applicable Holley factors, combined with Tony's lack of involvement with his son for thirty months, support the trial court's appointment of Stoney as a positive improvement and in T.D.C.'s best interest. This suit is really a suit to modify legal managing conservatorship so that it matches the child's reality: the child had lived with Stoney and his other children for virtually his entire life and Tony had never consistently visited or supported his child. Thus, I would conclude that the evidence supporting the finding that appointing Stoney would be a positive improvement is not so weak and that the evidence supporting a contrary finding is not so overwhelming as to justify a new trial. Further, I do not believe we can say that the trial court abused its discretion because there is more than some evidence of a substantive and probative character to support the court's decision. Likewise, I believe we cannot say the trial court's decision was arbitrary or unreasonable. See D.R., 894 S.W.2d at 95.
*883 For the foregoing reasons, I do not believe the trial court abused its discretion and therefore, I respectfully dissent.
NOTES
[1] The dissent's statement that the trial court found Tony to be in arrears on child support payments to Martina in the amount of $1,950 misleadingly implies that Tony did not make child support payments as ordered. See Dissent op. at 880. In the 1995 paternity order, Tony was ordered to pay Martina $2,501 in retroactive child support in installments of $26 per month with 12% interest per annum beginning July 1, 1996. Tony was also ordered to pay Martina regular child support in the amount of $229 per month beginning January 1, 1996. The evidence shows that Tony made all child support payments he was ordered to pay until he gained temporary custody of T.D.C. During that time, Tony ceased making child support payments, and the parties stipulated that he should receive a credit on the amount he owed on child support for that period of time. There is no evidence that Tony ever failed to make child support payments, and there is nothing in the record to indicate that the $1,950 in arrearage owed to Martina is anything more than the balance Tony owes on the retroactive child support ordered to be paid in the 1995 paternity order.
[2] There is evidence in the record, however, that T.D.C. did not begin residing with Stoney until October or November of 1997. This evidence includes a "Rule 11 Agreement for Final Order" in the custody suit regarding Martina and Stoney's three children, which states that the court "finds the children have resided with the movant, Stoney Short, since November 1997." Stoney also testified that T.D.C. began living with him at the same time his three children did.
[3] The witnesses called were Stoney, Tony, their wives, and Stoney's wife's ex-husband.
[4] In light of our holding that the parental presumption does not apply, it is unnecessary for us to reach the question raised in issue two of whether the presumption was unrebutted because the evidence is insufficient to support the trial court's voluntary relinquishment findings regarding Tony.
[5] By appointing Stoney and Tony as joint managing conservators, and by simultaneously renaming Martina as possessory conservator, the trial court appointed a new managing conservator.
[6] We agree with those courts of appeals that have concluded that there is no meaningful distinction between "positive improvement" and "best interests" of the child. See, e.g., In re A.P.S., 54 S.W.3d 493, 495-97 (Tex.App.-Texarkana 2001, no pet.); Turner v. Turner, 47 S.W.3d 761, 767 (Tex.App.-Houston [1st Dist.] 2001, no pet.).
[7] Stoney argues on rehearing that the trial court's positive improvement finding is correct because T.D.C.'s existing primary conservator, Martina, is serving a jail sentence.

This fact does not alter the trial court's duty to make a best interests determination regarding Stoney. Here, that determination is not supported by factually sufficient evidence.
[8] The dissent agrees that, in the family law context, legal and factual sufficiency challenges "are relevant factors in assessing whether a trial court abused its discretion." Dissent op. at 877 (emphasis supplied). The dissent reasons, however, that once we have reviewed the evidence for legal and factual sufficiency, we must then determine that no abuse of discretion has occurred if the trial court's decision is based on "conflicting evidence" or "some evidence of a substantive and probative character." Id. at 878. In other words, the dissent contends that because there is some evidence to support the trial court's positive improvement finding in this case, we must conclude that the appointment of Stoney as primary managing conservator is within the trial court's discretion, even though the evidence of positive improvement is factually insufficient. We reject the circular logic of this approach because it would obviously render our factual sufficiency review irrelevant and meaningless.
[1] The majority acknowledges Tony's failure to pay this amount but justifies it on the basis that Tony only failed to pay during the short time he had custody. This is still a violation of a valid child support order that had not yet been modified.
[2] The order in the record shows the writ was granted on July 7, 1999. However, both parties recite in their pleadings that the Johnson County court denied Stoney's petition on July 9, 1999. In any event, the case was transferred to Tarrant County on or about October 6, 1999.