

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00340-CV

IN THE INTEREST OF A.G.C., A
CHILD

-----------

FROM THE 322ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

This is an appeal of a final order entered in a suit affecting the parent-child relationship. The principals are Appellant Father, Appellee Mother, and their daughter A.G.C., who was five years old at the time of trial.[2]

---

[1]*See* Tex. R. App. P. 47.4.

[2]We use aliases to protect the identities of the individuals involved in this case. *See* Tex. Fam. Code Ann. § 109.002(d) (West Supp. 2013).

Appellant states the issue on appeal as follows: "Did the District Court act in an arbitrary or unreasonable manner or without reference to any guiding principles in determining the best interests of the child?"

**PROCEDURAL BACKGROUND**

Appellant and Appellee were divorced in January 2009. The Final Decree provided that both parties were named as joint managing conservators with Appellee given the exclusive right to designate the primary residence of A.G.C. Appellant was given a standard possession order under the Texas Family Code and was ordered to pay child support to Appellee and to provide health insurance for A.G.C.

In December 2010, Appellant filed a petition to modify the parent-child relationship, asking the trial court to name him as the conservator with the exclusive right to designate the primary residence of A.G.C. because Appellee had voluntarily relinquished custody to him in August 2010. At the temporary orders hearing in February 2011, the trial court granted this relief and ordered Appellee to pay child support while Appellant continued to provide medical benefits to A.G.C. The temporary orders remained in place until the final hearing on July 6, 2012.

After the final hearing, the trial court ordered that both parties be joint managing conservators with the same liberal visitation that had existed when the divorce was granted, with Appellee being the conservator who could determine where the child resided. The trial court also ordered Appellant to pay child

2

support and to be given credit for the support Appellee had not paid. It is the results of this hearing of which Appellant complains. The only record presented in this appeal is from the final hearing.

## THE EVIDENCE BEFORE THE TRIAL COURT

At the final hearing, Appellant testified that in August 2010, Appellee's mother brought A.G.C. and her clothes to him; told him A.G.C. had been left with her; and said she did not know where Appellee was. Appellant speculated that Appellee had been with her boyfriend C.D. and said that Appellee had a problem with abusing the pain medication hydrocodone. Appellee had visited with A.G.C. after Appellant obtained custody; however, she had not paid all of her child support. Appellant had not attempted to enforce payment because he did not want the mother of his child to go to jail.[3]

Appellant was twenty-seven years old and an employee of Alpine Power Systems, which serviced backup generators at hospitals and other places that had them. Appellant's employer would allow him to get off work to pick up A.G.C. if he had to. Appellant testified he was presently renting a house in Saginaw where he and A.G.C. had separate bedrooms, and he introduced pictures of the house. He had several residences prior to moving to Saginaw, one of which had burned down.

---

[3]The trial court observed that the temporary custody order had not been reduced to writing.

3

A.G.C. was in day care at Valerie's Kid Kare. Appellant dropped her there in the morning, and the day care took her to her school, picked her up after school, and kept her until he or his mother could retrieve her. A.G.C. had been in kindergarten and would be going into the first grade. She had done well in school and had friends at school, at the day care, and in the neighborhood where they lived. A.G.C. had been absent from school nine times because of illness.

Appellee lived about nine miles away in Watauga, and A.G.C. would have to change schools if custody was changed. Appellant said he was also seeking child support from Appellee and a shared payment for medical expenses.

In cross examination, Appellant admitted he and A.G.C. had lived in four different residences while she was in his custody. The school A.G.C. attended was not located in the district in which Appellant lived—it was in the district in which Appellant's mother lived. Appellant had given his mother's address so A.G.C. could attend the school near his mother. Even though A.G.C. had been in his care for five months, Appellant did not file for custody until he received notice of review by the child support office.

Appellant admitted that the concerns he had when Appellee had A.G.C. in her care were not related to her prescription drug use. He recognized Appellee had chronic health problems, and he had brought A.G.C. to the hospital to visit with her.

Appellee was called as an adverse witness. She testified she was twenty-eight years old. She and Appellant had divorced in February 2010. At the time

of the divorce, she and A.G.C. were living with Appellee's mother in Haslet. When asked what health issues she had, Appellee said, "Autoimmune disorder, arthritis, fibromyalgia[,] interstitial cystitis, endometriosis. So lots of bone issues and just blood issues which causes my immune system to where I get sick a lot."

Appellee further testified that her mom was there to help her in caring for A.G.C. She admitted that she continued to use hydrocodone, but she said that she only took two tablets a day, if needed, as prescribed by her doctor, who also gave her samples of other drugs she needed but could not afford. She was also taking seventy-five milligrams of Lyrica twice a day for her fibromyalgia and Soma, a muscle relaxer, as needed. Her doctor had not suggested any restrictions on her driving, caring for A.G.C., or working while taking the medication.

Appellee was presently employed selling high-end appliances part-time, fifteen to twenty hours a week at Pacific Kitchen and Home, which was in Best Buy. Prior to that, she had worked at Home Depot for four and a half years. She had changed jobs because when she worked at Home Depot, she had to do a lot of heavy lifting, which was bad for her health. She admitted being behind in paying child support as ordered in the previous temporary hearing.

Appellee had asked Appellant in August or September 2010 to take care of A.G.C. for her because of her health problems and because she was in and out of the hospital. During this time, she stayed at different times with her mom, a girlfriend, and her boyfriend C.D.

5

Appellee told of having another daughter, L., who was seven years old, by a third party, R.D., who was not paying child support. Appellee was trying to obtain child support through the Attorney General's office. She said R.D. had no part in L.'s life and did not visit with her. She carried health insurance on L. through CHIPs.

Appellee and L. have lived in Watauga with C.D. since the first of 2011. C.D. is an electrician who is twenty-eight years old. He had been arrested one time when he was eighteen years old for paraphernalia.

Appellee said Appellant had known L. since she was a baby. When Appellee had primary custody, Appellant would include L. in his visitations with A.G.C. However, since Appellant gained primary custody of A.G.C., he has had little to do with L.

When L. would attend school, she would be going to the school where Appellee and C.D. lived. If Appellee had primary custody of A.G.C., she also would attend school there. L. would be in the second grade and A.G.C. in the first.

During the time that Appellant had primary custody, visitations had not been strictly followed; sometimes A.G.C. would be with Appellee for up to a month at a time.

Appellee was concerned about the environment in which Appellant lived and said that sometimes there was a party atmosphere there with a lot of drinking. Appellee was also concerned that A.G.C. was not properly supervised

6

in Appellant's care. She said Appellant also took hydrocodone. She told of one instance in which Appellant had left an open bottle of hydrocodone in a place to which A.G.C. had access. Appellee said sometimes Appellant did not properly hygienically care for A.G.C. and that she was sometimes dirty when Appellee picked her up.

Appellee said A.G.C. would be better cared for with Appellee having primary custody. She and L. had been living with C.D. for almost two years. A.G.C. wanted to live with Appellee and A.G.C.'s sister in the same home. Her situation that existed when Appellant had temporary custody was no longer a problem, and at the present time, Appellee said she was fairly healthy.

Appellee pointed out that if she had primary custody, A.G.C. would not have to go to day care. Because Appellee worked part time, she could take A.G.C. to school and pick her up. Appellee intended to keep working part time so she could care for her children.

When the trial court inquired whether she and C.D. planned to get married, Appellee said they were discussing it. Appellee also said she has had rheumatoid arthritis since she was fourteen years old and was working with her doctor to get off the hydrocodone. He had prescribed patches for her pain.

## APPLICABLE LAW AND STANDARD OF REVIEW

We review the trial court's modification of managing conservatorship for an abuse of discretion. *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g); *see In re A.B.H.*, 266 S.W.3d 596, 601 (Tex.

7

App.—Fort Worth 2008, no pet.) (op. on reh'g) (applying standard). A trial court abuses its discretion if it acts arbitrarily and unreasonably or without reference to guiding principles. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011); *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). A trial court also abuses its discretion when it does not analyze or apply the law properly. *Iliff*, 339 S.W.3d at 78. Legal and factual sufficiency are not independent grounds of error in modification cases, but they are relevant factors in deciding whether the trial court abused its discretion. *T.D.C.*, 91 S.W.3d at 872.

The family code authorizes a trial court to modify an order that appoints a child's conservators, sets the terms and conditions of conservatorship, and provides for the possession of a child if modification would be in the best interest of the child and

> (1)    the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of:
>
>> (A)    the date of the rendition of the order; or
>>
>> (B)    the date of the signing of a mediated or collaborative law settlement agreement on which the order is based;
>
> (2)    the child is at least 12 years of age and has expressed to the court in chambers as provided by Section 153.009 the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child; or
>
> (3)    the conservator who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession of the child to another person for at least six months.

8

Tex. Fam. Code Ann. § 156.101(a) (West Supp. 2013); *see In re J.A.J.*, 243 S.W.3d 611, 617 (Tex. 2007) (noting that trial court retains jurisdiction to modify conservatorship order if it is in the child's best interest and the parent's or child's circumstances have materially and substantially changed since rendition).

A court's primary consideration in determining the issue of conservatorship and possession must always be the best interest of the child. Tex. Fam. Code Ann. § 153.002 (West 2008); *J.A.J.*, 243 S.W.3d at 614. Courts may use a nonexhaustive list of factors to determine the child's best interest. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *T.D.C.*, 91 S.W.3d at 873. Those factors include

(A)   the desires of the child;

(B)   the emotional and physical needs of the child now and in the future;

(C)   the emotional and physical danger to the child now and in the future;

(D)   the parental abilities of the individuals seeking custody;

(E)   the programs available to assist these individuals to promote the best interest of the child;

(F)   the plans for the child by these individuals or by the agency seeking custody;

(G)   the stability of the home or proposed placement;

(H)   the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)   any excuse for the acts or omissions of the parent.

*Holley,* 544 S.W.2d at 371–72 (citations omitted). Other factors to consider in modification suits include the child's stability and the need to prevent constant litigation in child custody cases. *In re V.L.K.,* 24 S.W.3d 338, 343 (Tex. 2000).

## APPELLANT'S ARGUMENT

Appellant argues the trial court abused its discretion by determining that it was in A.G.C.'s best interests to be returned to the primary care of Appellee after Appellant had been named the conservator with the exclusive right to designate the primary residence of A.G.C. because there had been no change in Appellee's circumstance since Appellant was granted primary custody. Appellant claims the evidence reflected Appellee was still using pain killers and still living with her boyfriend C.D., while Appellant had established a stable home environment for A.G.C., who was healthy and had friends at day care, at school, and in the neighborhood where Appellant lived.

## ANALYSIS

There were no findings of fact requested or filed; therefore, we should imply all necessary findings of fact to support the trial court's order. *See Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003). If the trial court's implied findings are supported by the evidence, then we must uphold the judgment on any theory of law applicable to the case. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989).

We find that the record evidence supports the trial court's determination to return A.G.C. to the primary care of Appellee. The trial court could have

10

determined, based on the credibility and demeanor of the parties that this was in the best interest of the child because (1) A.G.C. would not have to go to day care before and after school; (2) A.G.C. would be with her half-sister L., both in school and at home, which A.G.C. wanted; (3) the circumstances that existed when Appellant obtained temporary custody were no longer viable because Appellee's health problems were improved and would no longer hamper her caring for the child; (4) Appellee and C.D., who had been together for almost two years and planned to get married, appeared to be in the best interest of A.G.C.; and (5) Appellant's motivation for seeking temporary custody may have been, in part, because he was facing an increase in child support, and not necessarily the best interest of the child.

Accordingly, we overrule Appellant's sole issue, and we affirm the trial court's judgment.

PER CURIAM

PANEL:    CHARLES  R.  HOLCOMB  (Senior  Judge,  Retired,  Sitting  By Assignment); MCCOY and MEIER, JJ.

DELIVERED:  January 2, 2014

11