IN THE INTEREST OF J.A.R., A CHILD

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-123-CV

IN THE INTEREST OF J.A.R., A CHILD 

------------

FROM THE 360TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Toby R.
(footnote: 2) appeals from the trial court’s order modifying a parent-child relationship.  Eleven months after the divorce in May 2000, Appellee Jennifer W. sued Toby R. seeking to modify the provisions of their divorce decree relating to their daughter, J.A.R., who was born in February 1998.  The divorce decree appointed the parties to be joint managing conservators of J.A.R., with Toby R. having the exclusive right to determine J.A.R.’s primary legal residence.  After a bench trial in October 2003, the court entered a modification order again appointing Jennifer W. and Toby R. as joint managing conservators but giving Jennifer W. the right to determine J.A.R.’s primary residence within Tarrant County, Texas.  Possession was granted according to the Standard Possession Order,
(footnote: 3) which was altered to grant visitation to the paternal grandparents on the fifth weekend of the month.  The order also required Toby R. to pay child support.

In three points, Toby R. challenges the legal and factual sufficiency of the evidence to establish a material and substantial change in circumstances and to establish that it would be in the best interest of the child to change conservatorship, and he contends that the trial court abused its discretion in modifying the terms of conservatorship set out in the divorce decree.  We affirm.

PROCEDURAL BACKGROUND

Toby and Jennifer married on August 8, 1997 and divorced on May 15, 2000.  The divorce decree granted Toby and Jennifer joint managing conservatorship over their child, J.A.R., and Toby was given the right to determine J.A.R.’s primary residence.  The trial court granted conservatorship according to the Standard Possession Order, but modified the terms of the Standard Possession Order to allow J.A.R. to spend the night at Jennifer’s house on  Monday nights.  The court did not require Jennifer to pay child support.

On April 25, 2001, Jennifer filed a motion to modify the parent-child relationship, alleging a material and substantial change in the circumstances of the child or of one or both of the parents and that appointment of Jennifer as the parent to designate J.A.R.’s primary residence would be in the child’s best interest.  Toby filed an answer and a counterpetition requesting the court to modify the terms of the divorce decree so as to require Jennifer to maintain health insurance for J.A.R. and to pay one-half of any of J.A.R.’s uninsured health care expenses.  Willie R. and Bridgett R., J.A.R.’s paternal grandparents, intervened seeking to be appointed joint managing conservators with Toby.

The trial court held a bench trial on October 21 and 22, 2003.  The trial court determined that Jennifer and Toby should remain joint managing conservators, Jennifer should be the parent with the authority to designate J.A.R.’s primary residence within Tarrant County, Jennifer should be primarily responsible for maintaining health insurance on J.A.R., and Toby should be required to pay child support.  The trial court granted possession according to the Standard Possession Order, modifying possession to grant Willie and Bridgett overnight visitation on Saturday of the fifth weekend of a month.

The trial court entered findings of fact and conclusions of law in support of its order.  Among other things, the trial court found that (1) it is in the best interest of the child that Jennifer and Toby be appointed joint managing conservators of the child and that Jennifer have the right to determine the child’s primary residence, (2) the circumstances of Toby have materially and substantially changed since the rendition of the prior order, (3) the circumstances of Jennifer have materially and substantially changed since the rendition of the prior order, and (4) it is in the best interest of the child for Willie and Bridgett to be awarded possession and access to the child. 

LEGAL AND FACTUAL SUFFICIENCY

Toby challenges the legal and factual sufficiency of the evidence to establish that a material and substantial change in circumstances and the best interest of the child required a change in conservatorship.  Toby also contends that the trial court abused its discretion by modifying the divorce decree and making Jennifer the joint managing conservator with the exclusive right to determine J.A.R.’s primary residence,
(footnote: 4) because the evidence did not reflect a material and substantial change in circumstances, nor did it indicate that modification would be in J.A.R.’s best interest.

As pertains to the facts of this case, the family code authorizes a trial court to modify an order that establishes conservatorship of a child if modification would be in the best interest of the child and the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the date of the rendition of the order.  T
EX
. F
AM
. C
ODE
 A
NN
. § 156.101 (Vernon Supp. 2004-05).  Accordingly, any person who seeks to modify an existing conservatorship order must show changed circumstances and that modification would be a positive improvement for the child.  
In re T.D.C.
, 91 S.W.3d 865, 871 (Tex. App.—Fort Worth 2002, pet. denied).  In determining the issues of conservatorship and possession of and access to the child, the court’s primary consideration shall always be the best interest of the child.  
Tex. Fam. Code Ann.
 § 153.002 (Vernon 2002); 
In re V.L.K.
, 24 S.W.3d 338, 342 (Tex. 2000).

1.  Standard of Review

We review the trial court's modification of joint managing conservatorship under an abuse of discretion standard.  
T.D.C.
, 91 S.W.3d at 872; 
see Gillespie v. Gillespie
, 644 S.W.2d 449, 451 (Tex. 1982) (applying the same standard of review in original determination of conservatorship).  A trial court abuses its discretion if it acts arbitrarily and unreasonably or without reference to guiding principles.  
Downer v. Aquamarine Operators
,
 Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).  In our review of modification under an abuse of discretion standard, legal and factual sufficiency are not independent grounds of error, but they are relevant factors in deciding whether the trial court abused its discretion.  
T.D.C.
, 91 S.W.3d at 872.

To determine whether the trial court has abused its discretion by making a decision based on legally or factually insufficient evidence, this court has employed a two-part test:  (1) Did the trial court have enough information upon which to exercise its discretion; and (2) Did the trial court err in applying its discretion?  
Id.
; 
see Norris
 v
. Norris
, 56 S.W.3d 333, 338 (Tex. App.—El Paso 2001, no pet.).  The traditional sufficiency review comes into play with regard to the first question.  
T.D.C.
, 91 S.W.3d at 872; 
Norris
, 56 S.W.3d at 338.  With regard to the second question, we determine, based on the elicited evidence, whether the trial court made a reasonable decision.  
T.D.C.
, 91 S.W.3d at 872; 
Norris
, 56 S.W.3d at 338. 

Toby complains that the trial court abused its discretion by modifying the divorce decree to name Jennifer as primary managing conservator because the evidence is insufficient to support a finding of a material and substantial change in circumstances and to show that modification is in J.A.R’s best interest.  If we determine that insufficient evidence exists to support this finding, we must then decide whether the trial court appropriately exercised its discretion by appointing Jennifer as primary managing conservator based on a finding unsupported by sufficient evidence.  
T.D.C.
, 91 S.W.3d at 872.

A legal sufficiency challenge may only be sustained when:  (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
“No Evidence”
 
and “Insufficient Evidence” Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960)
.  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not.
  
City of Keller v. Wilson
, 
168 S.W.3d 802, 828
 (Tex. 2005).

An assertion that the evidence is insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.  
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).  When conducting a factual sufficiency review, a court of appeals must not merely substitute its judgment for that of the trier of fact.  
Golden Eagle Archery, Inc. v. Jackson
, 116 S.W.3d 757, 761 (Tex. 2003).  The trier of fact is the sole judge of the credibility of witnesses and the weight to be given to their testimony.  
Id
.

2.  Factual Background

The testimony established that Jennifer remarried on February 17, 2001 and subsequently had two children with her new husband, Jose W.  Jennifer and Jose are living in and are purchasing a three bedroom mobile home on a one acre tract of land.  Toby married his second wife, Jana, on November 2, 2001.  At the time of the modification hearing, Toby and Jana were expecting a child and were living in and purchasing a three bedroom home. Jana was employed part-time and able to care for J.A.R. on the days she did not work. 

The record reflects that Toby was in the reserves, and the United States military activated Toby to Kuwait in December for what was supposed to be ninety days, but arrangements were made for Toby to come home for a court appearance.  Toby was again activated and sent to Saudi Arabia in May for approximately four months.  Prior to being deployed to Kuwait, Toby was a police officer with the City of Keller.  In May 2003, Toby became a deputy with the United States Marshal Service, and trained in Georgia for eight weeks.  At the time of the modification hearing, Toby was still employed in this capacity. Jennifer testified that Toby never informed her that he was leaving for Kuwait.  She testified that when she took J.A.R. to Toby’s house following her visitation, Jennifer asked to see Toby, and Jana informed Jennifer that Toby was not there.  Jennifer refused to leave J.A.R. with Jana at Toby’s house in his absence.  Jana testified that Jennifer did know that Toby was leaving for Kuwait because she and Jennifer had gone to lunch together before he left and discussed that Toby was leaving.

Jennifer further testified that rather than informing her that he was leaving for Georgia for eight weeks, Toby asked Jennifer to trade the month of June with him because he would be in and out of town during that month.  She testified that when she refused to trade months with him, Toby threatened to take J.A.R. with him, and therefore, Jennifer would miss her visitation in June. During each of the times that Toby was out of town, Jennifer refused to allow Jana to visit J.A.R.

When questioned, Toby acknowledged that he has moved five times in the three years preceding the modification hearing.  Jana testified that each time he moved, J.A.R. remained in the same school district and attended the same day care center.  Jennifer testified that Toby’s moving five times in the three years preceding the modification hearing demonstrated Toby’s instability. Jennifer testified that there has been a change in her circumstances since the divorce because she has remarried, has two children, has a new home, and has a constant routine that her family follows daily.  Bridgett testified that she believes Jennifer has matured since the time of the divorce.

Diana S., Toby’s aunt, and Bridgett both testified that Toby has limited the amount of time that Bridgett has been able to see J.A.R. since he became involved with Jana.  Bridgett had been assisting in caring for J.A.R. from the time she was four weeks old until she was approximately two and a half years old.  Jennifer speculated that the reason she was not named primary managing conservator of J.A.R. at the time of the divorce was because she and Toby were so young, and because Bridgett had cared for J.A.R. so much, it would be reasonable to believe that if Toby was named primary managing conservator, his mother would ultimately be caring for J.A.R.

Bridgett testified that she was providing for J.A.R. until Toby became involved with Jana.  Prior to that time, Bridgett had been taking care of J.A.R. day and night, because Jennifer was still in school and working a full-time job and Toby was away with the military.  Bridgett testified that she saw things about Jana she did not like, such as Jana force-feeding J.A.R., and she further testified that she confronted Toby about it.  Because Toby began limiting the amount of time that Bridgett has been able to spend with J.A.R., Jennifer began to allow Bridgett to visit with J.A.R. during her Wednesday night visitation period.  Jennifer testified that she thought Willie and Bridgett should remain a part of J.A.R.’s life because they had always been there for J.A.R. in the past.

Jennifer called Toby’s ex-girlfriend, Randy M., to testify that she lived with Toby following his divorce while he had custody of J.A.R.  Jennifer testified that she thought that it was inappropriate from a morality standpoint for J.A.R. to witness women sleeping at Toby’s house.  On cross-examination, Randy admitted that she had never changed her address with the post office or on her driver’s license, although she did change her address with her employer to reflect Toby’s address.  Additionally, she testified that she never paid rent, the phone bill, or insurance for Toby’s house, but she stayed over there every night of the week.  Toby testified that Randy never lived at his house, but she did stay the night there.  Jana admitted that she and Toby lived together prior to their marriage and slept together in the same bed in the presence of J.A.R.  Jennifer acknowledged that Jose slept over at her apartment before they were married, but denied that he ever stayed the night there when J.A.R. was visiting.

Jennifer testified that she and Toby do not have an open dialogue to communicate about their daughter, and when Jennifer calls Toby’s house to talk about J.A.R., she primarily speaks with Jana.  Jennifer further testified that Toby has threatened her with withholding visitation of J.A.R.  Jennifer also has withheld visitation of J.A.R., but she testified that J.A.R. stayed with her longer because she had confusion with the language of the court order regarding holiday visitation.  Toby and Jana testified that when J.A.R. returned from Jennifer’s house, she was dirty and had not been bathed, but Jennifer testified that she bathed J.A.R. every night that J.A.R. stayed at her house. 

The record reflects that Bridgett contacted Child Protective Services (CPS) because she was concerned for J.A.R.’s safety after seeing curling iron burns on her ear and forehead.  J.A.R. was burned one morning while Jana was curling her hair before school.  Jana testified that she accidentally burned J.A.R. while curling her hair.  CPS ultimately dismissed the case after taking a statement from J.A.R.

CPS investigated a second incident, reported by Jennifer, involving a two-inch bruise on J.A.R.’s buttocks.  CPS  took a statement from Toby and J.A.R., and J.A.R. advised CPS that James Jennifer’s father, had spanked J.A.R. with a belt.

The record also reflects Bridgett and Jennifer;s concern over whether Toby’s home was the best environment in which to raise J.A.R.  Bridgett testified that she felt that J.A.R. would be safe at Jennifer and Jose’s house, but she did not believe that J.A.R. would be safe at Toby’s house with Jana there because Bridgett believed Jana had a quick temper.  Bridgett also testified that on one occasion Jana ripped off J.A.R.’s shirt when J.A.R. stained the shirt with a drop of spaghetti sauce, yelling that she had ruined the shirt. Bridgett expressed her concern that Jana would not properly care for J.A.R.

Toby’s aunt, Donna C., testified that she had seen Jana lose her temper and take her anger out on the child, saying she had seen Jana jerking the child around.  Diana and Bridgett both testified that they saw Jana stuffing food into J.A.R.’s mouth.  Diana testified that she believed it would be in J.A.R.’s best interest to live with Jennifer, rather than Toby, because Jana would not be a good mother to J.A.R.  Diana testified that Jana was the primary disciplinarian of J.A.R., but Jana testified that Toby was the primary disciplinarian.  Jana denied that she physically jerked J.A.R. around and disputed claims that she had forced food into J.A.R.’s mouth, but did acknowledge that she had spanked J.A.R. on occasion. 

Bridgett and Donna both testified that Jennifer had matured since the divorce.  Jennifer testified that if she were to be named primary managing conservator, she would keep J.A.R. in contact with Toby’s extended family, and even offered to allow the child to visit the Toby’s parents during her visitation periods.  Although J.A.R. would be required to attend a school in a different school district, Jennifer planned on keeping J.A.R.’s schedule similar to her past schedule by enrolling her in day care and continuing her soccer activities.

Toby and Jennifer disagree about J.A.R.’s medical condition.  Toby testified that J.A.R. has severe bowel problems and gastroesophageal reflux.  Toby testified that if J.A.R. does not take her medicine she becomes severely constipated.  He further testified that when J.A.R. is in Jennifer’s care for a prolonged period of time, J.A.R. would be constipated when she returned to Toby’s house.  He testified that J.A.R. should be on a consistent dosage.  Toby stated he was concerned over J.A.R.’s condition because his uncle developed esophageal cancer from having gastroesophageal reflux that was never treated. 

Although Toby testified that he had some doubt as to whether Jennifer properly administered medication to J.A.R., Jennifer testified that she gave the medication on an as-needed basis, as prescribed by J.A.R’s doctor.  Jennifer also testified that Toby sometimes did not send the medication with J.A.R. when she would visit Jennifer’s house.  Jennifer further testified that she has taken J.A.R. to another doctor, and after running tests on J.A.R., the doctor does not believe that J.A.R. had these problems.

3.  Material and Substantial Change

A court's determination as to whether a material change of circumstances has occurred is not guided by rigid rules and is fact-specific.  
In re Z.B.P
 
,
 109 S.W.3d 772, 779 (Tex. App.—Fort Worth 2003, no pet.). 
 Evidence of a parent's subsequent marriage to another can constitute a relevant, material change of circumstances after rendition of the decree sought to be modified.  
In re C.Q.T.M.
, 25 S.W.3d 730, 735 (Tex. App.—Waco 2000, pet. denied). Examples of changes of conditions which have been held to be material are (1) marriage of one of the parties (2) poisoning of the mind of the child by one of the parents (3) one of the parties becoming an improper person for the custody (4) changes in the home surroundings, and (5) one of the parties becoming mean to the child.  
Wright v. Wright
, 610 S.W.2d 553, 555 (Tex. App.—Houston [1st
 Dist.] 1980, no writ)
.
  Additionally, “the change in a child from a babe in arms or toddler to a school-aged child in itself is sufficient to show the material change necessary to support modification.”  
In re Davis
, 30 S.W.3d 609, 614-15 (Tex. App.—Texarkana 2000, no pet.).

Toby argues that the party seeking modification of conservatorship must prove that a material and substantial change occurred by presenting evidence establishing the conditions that existed at the time of the original order and then must establish the change in circumstances that are material and substantial since the rendition of the order.  Toby argues that Jennifer never established the material and substantial change in circumstances because Jennifer never compared the conditions as they existed at the time of the original custody order with the present conditions.  The method of showing this change is not prescribed by the family code. 
 T.A.B. v. W.L.B.
, 598 S.W.2d 936, 939 (Tex. App.—El Paso 1980, writ ref’d n.r.e.), 
cert. denied
, 454 U.S. 828 (1981).  Toby relies on 
Knowles v. Grimes
, 437 S.W.2d 816 (Tex. 1969), and 
Bates v. Tesar
, 81 S.W.3d 411 (Tex. App.—El Paso 2002, no writ), to support his position, but neither case mandates a particular method of proving the change in circumstances; therefore neither supports Toby’s assertion. 

At first glance, two other cases appear to support Toby’s position but actually they do not.  In 
Davis v. Duke, 
537 S.W.2d 519, 521 (Tex. Civ. App.—Austin 1976, no writ), the court held that the appellant had failed to prove the conditions that existed at the time of the entry of the custody decree, but it also held that the appellant failed to prove the present conditions; therefore, 
Davis
 does not support Toby’s contention, because the judgment could have been upheld on either finding.  In 
Considine v. Considine
, 726 S.W.2d 253, 255 (Tex. App.—Austin 1987, no writ), the court stated that “[t]o prove that a material change of circumstances has occurred, the movant must demonstrate what conditions existed at the time of the entry of the prior order.  Once such conditions have been established, movant must show what material changes have occurred in the intervening period.”  This is one method of showing material and substantial change, but not the only method.  
T.A.B.
, 598 S.W.2d at 939.  The requirement is that a change must be shown, and any method of proof that shows a material and substantial change satisfies the statutory requirement. 
 Id.

Additionally, it is plain in the instant case that the conduct that is relied upon as showing a material change in circumstances occurred subsequent to the decree sought to be modified.  To show a material and substantial change in circumstances, Jennifer relies in part on her remarriage and the birth of J.A.R.’s siblings.  She also relies on the fact that Toby has also remarried and at the time of the modification hearing was expecting a child with Jana.  Jennifer argues that Toby and Jana have become mean to J.A.R.; therefore, Toby has become an improper person for custody.  She also points to the limited amount of time Toby has permitted J.A.R. to spend with her paternal grandparents, Willie and Bridgett, since the time of Toby’s remarriage.

We conclude that more than a scintilla of evidence supports the trial court’s finding that the circumstances of both conservators have materially and substantially changed.  Further, after reviewing the record of the case, we cannot say that the evidence supporting a finding that the circumstances of the conservators have materially and substantially changed is so weak or the evidence to the contrary is so overwhelming that the modification should be set aside and a new trial ordered.  
See Garza
, 395 S.W.2d at 823.  The fact that a trial court may decide a matter within its discretionary authority in a manner different from an appellate court in similar circumstances does not demonstrate an abuse of discretion.  We hold that the trial court did not abuse its discretion in determining that the circumstances of the conservators have materially and substantially changed.

4.  Best Interest of the Child

The family code does not define the relevant factors to be considered when determining whether a requested change is in the best interest of a child.  Texas courts have applied the nonexhaustive list of 
Holley 
factors to determine the child’s best interest.  
Holley v. Adams
, 544 S.W.2d 367, 371-72 (Tex. 1976); 
T.D.C.
, 91 S.W.3d at 873.  These factors include, but are not limited to:  (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.  
Holley
, 544 S.W.2d at 371-72.  Furthermore, evidence regarding the conduct and abilities of a new spouse can be relevant and admissible in a suit seeking modification of conservatorship of a child, including issues of whether modification of conservatorship would be in the best interest of the child.  
C.Q.T.M.
, 25 S.W.3d at 734.

Donna and Bridgett both testified that Jennifer had matured since the divorce.  Although J.A.R. would be required to attend a school in a different school district, Jennifer testified that she planned on keeping J.A.R.’s schedule similar to her past schedule by enrolling her in day care and continuing her soccer activities.  Jennifer testified that she plans to keep J.A.R. in contact with Toby’s extended family, and even offered to allow J.A.R. to visit Willie and Bridgett during her visitation periods.  Jennifer opined that her home was a much more stable environment than Toby’s to raise J.A.R. because she has kept the same job, has not moved as often as Toby, and her family has a constant routine that they follow daily. 

Diana testified that she did not think it is in J.A.R.’s best interest to have Jana be the disciplinarian of J.A.R..  Bridgett testified that she did not believe that J.A.R. would be safe living with Toby and Jana because Jana has a quick temper.  Bridgett expressed her concern that if Jana was the one taking care of J.A.R., she would not be cared for properly.

We conclude that there is more than a scintilla of evidence to support the trial court’s finding that the modification of the divorce decree to appoint Jennifer as primary managing conservator would be in the best interest of J.A.R.  Furthermore, after reviewing the record, we cannot say the evidence supporting the finding that appointing Jennifer as primary managing conservator is in the best interest of the child is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza
, 395 S.W.2d at 823.  The fact that a trial court may decide a matter within its discretionary authority in a manner different from an appellate court in similar circumstances does not constitute an abuse of discretion.  We hold that the trial court did not abuse its discretion in determining that appointing Jennifer as primary managing conservator is in J.A.R.’s best interest.  We overrule Toby’s three points.

CONCLUSION

Having overruled Toby’s three points, we affirm the judgment of the trial court.

PER CURIAM

PANEL A:  HOLMAN, GARDNER, and McCOY, JJ.

DELIVERED:  October 27, 2005

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
To protect the privacy of the parties involved in this appeal, we identify the child by initials only and Appellant and Appellee by their first name only.  
See
 
Tex. Fam. Code Ann.
 § 109.002(d) (Vernon 2002).

3:
See
 
Tex. Fam. Code Ann. §§ 153.137, 153.311-317 (
Vernon 2002 & Supp
. 2004-05). 

4: See
 
Tex. Fam. Code Ann.
§ 153.006 (Vernon 2002), § 153.134 (Vernon Supp. 2004-05).  Throughout this opinion, the joint managing conservator with the exclusive right to determine the child’s primary residence will be referred to as the primary managing conservator.