COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-04-123-CV

 

 

IN THE INTEREST OF J.A.R., A CHILD                                                     

 

 

                                              ------------

 

           FROM
THE 360TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








Appellant Toby R.[2]
appeals from the trial court=s order modifying a parent-child relationship.  Eleven months after the divorce in May 2000,
Appellee Jennifer W. sued Toby R. seeking to modify the provisions of their
divorce decree relating to their daughter, J.A.R., who was born in February
1998.  The divorce decree appointed the
parties to be joint managing conservators of J.A.R., with Toby R. having the
exclusive right to determine J.A.R.=s primary legal residence. 
After a bench trial in October 2003, the court entered a modification
order again appointing Jennifer W. and Toby R. as joint managing conservators
but giving Jennifer W. the right to determine J.A.R.=s primary residence within Tarrant County, Texas.  Possession was granted according to the
Standard Possession Order,[3]
which was altered to grant visitation to the paternal grandparents on the fifth
weekend of the month.  The order also
required Toby R. to pay child support.

In three points, Toby R.
challenges the legal and factual sufficiency of the evidence to establish a
material and substantial change in circumstances and to establish that it would
be in the best interest of the child to change conservatorship, and he contends
that the trial court abused its discretion in modifying the terms of
conservatorship set out in the divorce decree. 
We affirm.

PROCEDURAL BACKGROUND








Toby and Jennifer married on
August 8, 1997 and divorced on May 15, 2000. 
The divorce decree granted Toby and Jennifer joint managing
conservatorship over their child, J.A.R., and Toby was given the right to
determine J.A.R.=s primary
residence.  The trial court granted
conservatorship according to the Standard Possession Order, but modified the
terms of the Standard Possession Order to allow J.A.R. to spend the night at
Jennifer=s house on  Monday nights.  The court did not require Jennifer to pay
child support.

On April 25, 2001, Jennifer
filed a motion to modify the parent-child relationship, alleging a material and
substantial change in the circumstances of the child or of one or both of the
parents and that appointment of Jennifer as the parent to designate J.A.R.=s primary residence would be in the child=s best interest.  Toby filed an
answer and a counterpetition requesting the court to modify the terms of the
divorce decree so as to require Jennifer to maintain health insurance for
J.A.R. and to pay one-half of any of J.A.R.=s uninsured health care expenses. 
Willie R. and Bridgett R., J.A.R.=s paternal grandparents, intervened seeking to be appointed joint
managing conservators with Toby.








The trial court held a bench
trial on October 21 and 22, 2003.  The
trial court determined that Jennifer and Toby should remain joint managing
conservators, Jennifer should be the parent with the authority to designate
J.A.R.=s primary residence within Tarrant County, Jennifer should be primarily
responsible for maintaining health insurance on J.A.R., and Toby should be
required to pay child support.  The trial
court granted possession according to the Standard Possession Order, modifying
possession to grant Willie and Bridgett overnight visitation on Saturday of the
fifth weekend of a month.

The trial court entered
findings of fact and conclusions of law in support of its order.  Among other things, the trial court found
that (1) it is in the best interest of the child that Jennifer and Toby be
appointed joint managing conservators of the child and that Jennifer have the
right to determine the child=s primary residence, (2) the circumstances of Toby have materially and
substantially changed since the rendition of the prior order, (3) the
circumstances of Jennifer have materially and substantially changed since the
rendition of the prior order, and (4) it is in the best interest of the child
for Willie and Bridgett to be awarded possession and access to the child. 

LEGAL AND FACTUAL SUFFICIENCY








Toby challenges the legal and
factual sufficiency of the evidence to establish that a material and
substantial change in circumstances and the best interest of the child required
a change in conservatorship.  Toby also
contends that the trial court abused its discretion by modifying the divorce
decree and making Jennifer the joint managing conservator with the exclusive
right to determine J.A.R.=s primary
residence,[4]
because the evidence did not reflect a material and substantial change in
circumstances, nor did it indicate that modification would be in J.A.R.=s best interest.

As pertains to the facts of
this case, the family code authorizes a trial court to modify an order that
establishes conservatorship of a child if modification would be in the best
interest of the child and the circumstances of the child, a conservator, or
other party affected by the order have materially and substantially changed
since the date of the rendition of the order. 
TEX. FAM. CODE ANN. ' 156.101 (Vernon Supp. 2004-05). 
Accordingly, any person who seeks to modify an existing conservatorship
order must show changed circumstances and that modification would be a positive
improvement for the child.  In re
T.D.C., 91 S.W.3d 865, 871 (Tex. App.CFort Worth 2002, pet. denied). 
In determining the issues of conservatorship and possession of and
access to the child, the court=s primary consideration shall always be the best interest of the
child.  Tex.
Fam. Code Ann. ' 153.002
(Vernon 2002); In re V.L.K., 24 S.W.3d 338, 342 (Tex. 2000).

 








1.  Standard of Review

We review the trial court's
modification of joint managing conservatorship under an abuse of discretion
standard.  T.D.C., 91 S.W.3d at
872; see Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982)
(applying the same standard of review in original determination of
conservatorship).  A trial court abuses
its discretion if it acts arbitrarily and unreasonably or without reference to
guiding principles.  Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241‑42 (Tex. 1985), cert.
denied, 476 U.S. 1159 (1986).  In our
review of modification under an abuse of discretion standard, legal and factual
sufficiency are not independent grounds of error, but they are relevant factors
in deciding whether the trial court abused its discretion.  T.D.C., 91 S.W.3d at 872.








To determine whether the
trial court has abused its discretion by making a decision based on legally or
factually insufficient evidence, this court has employed a two‑part
test:  (1) Did the trial court have
enough information upon which to exercise its discretion; and (2) Did the trial
court err in applying its discretion?  Id.;
see Norris v. Norris, 56 S.W.3d 333, 338 (Tex. App.CEl Paso 2001, no pet.).  The
traditional sufficiency review comes into play with regard to the first
question.  T.D.C., 91 S.W.3d at
872; Norris, 56 S.W.3d at 338. 
With regard to the second question, we determine, based on the elicited
evidence, whether the trial court made a reasonable decision.  T.D.C., 91 S.W.3d at 872; Norris,
56 S.W.3d at 338. 

Toby complains that the trial
court abused its discretion by modifying the divorce decree to name Jennifer as
primary managing conservator because the evidence is insufficient to support a
finding of a material and substantial change in circumstances and to show that
modification is in J.A.R=s best
interest.  If we determine that
insufficient evidence exists to support this finding, we must then decide
whether the trial court appropriately exercised its discretion by appointing
Jennifer as primary managing conservator based on a finding unsupported by
sufficient evidence.  T.D.C., 91
S.W.3d at 872.








A legal sufficiency challenge may only be sustained
when:  (1) the record discloses a
complete absence of evidence of a vital fact; (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (4) the evidence establishes conclusively the opposite of a
vital fact.  Uniroyal Goodrich Tire
Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526
U.S. 1040 (1999); Robert W. Calvert, ANo Evidence@ and AInsufficient
Evidence@ Points of
Error, 38 TEX. L. REV. 361, 362-63 (1960).  In
determining whether there is legally sufficient evidence to support the finding
under review, we must consider evidence favorable to the finding if a
reasonable factfinder could, and disregard evidence contrary to the finding
unless a reasonable factfinder could not. 
City of Keller v. Wilson, 168 S.W.3d
802, 828
(Tex. 2005).

An assertion that the
evidence is insufficient to support a fact finding means that the evidence
supporting the finding is so weak or the evidence to the contrary is so
overwhelming that the answer should be set aside and a new trial ordered.  Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965).  We are required to consider
all of the evidence in the case in making this determination, not just the evidence
that supports the finding.  Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex.), cert. denied,
525 U.S. 1017 (1998).  When conducting a
factual sufficiency review, a court of appeals must not merely substitute its
judgment for that of the trier of fact.  Golden
Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003).  The trier of fact is the sole judge of the
credibility of witnesses and the weight to be given to their testimony.  Id.

2.  Factual Background








The testimony established
that Jennifer remarried on February 17, 2001 and subsequently had two children
with her new husband, Jose W.  Jennifer
and Jose are living in and are purchasing a three bedroom mobile home on a one
acre tract of land.  Toby married his second
wife, Jana, on November 2, 2001.  At the
time of the modification hearing, Toby and Jana were expecting a child and were
living in and purchasing a three bedroom home. Jana was employed part-time and
able to care for J.A.R. on the days she did not work. 

The record reflects that Toby
was in the reserves, and the United States military activated Toby to Kuwait in
December for what was supposed to be ninety days, but arrangements were made
for Toby to come home for a court appearance. 
Toby was again activated and sent to Saudi Arabia in May for
approximately four months.  Prior to
being deployed to Kuwait, Toby was a police officer with the City of
Keller.  In May 2003, Toby became a
deputy with the United States Marshal Service, and trained in Georgia for eight
weeks.  At the time of the modification
hearing, Toby was still employed in this capacity.     Jennifer testified that Toby never informed her that he was
leaving for Kuwait.  She testified that
when she took J.A.R. to Toby=s house following her visitation, Jennifer asked to see Toby, and Jana
informed Jennifer that Toby was not there. 
Jennifer refused to leave J.A.R. with Jana at Toby=s house in his absence.  Jana
testified that Jennifer did know that Toby was leaving for Kuwait because she
and Jennifer had gone to lunch together before he left and discussed that Toby
was leaving.








Jennifer further testified
that rather than informing her that he was leaving for Georgia for eight weeks,
Toby asked Jennifer to trade the month of June with him because he would be in
and out of town during that month.  She
testified that when she refused to trade months with him, Toby threatened to
take J.A.R. with him, and therefore, Jennifer would miss her visitation in
June. During each of the times that Toby was out of town, Jennifer refused to
allow Jana to visit J.A.R.

When questioned, Toby
acknowledged that he has moved five times in the three years preceding the
modification hearing.  Jana testified
that each time he moved, J.A.R. remained in the same school district and
attended the same day care center.  Jennifer
testified that Toby=s moving
five times in the three years preceding the modification hearing demonstrated
Toby=s instability. Jennifer testified that there has been a change in her
circumstances since the divorce because she has remarried, has two children,
has a new home, and has a constant routine that her family follows daily.  Bridgett testified that she believes Jennifer
has matured since the time of the divorce.








Diana S., Toby=s aunt, and Bridgett both testified that Toby has limited the amount
of time that Bridgett has been able to see J.A.R. since he became involved with
Jana.  Bridgett had been assisting in
caring for J.A.R. from the time she was four weeks old until she was
approximately two and a half years old. 
Jennifer speculated that the reason she was not named primary managing
conservator of J.A.R. at the time of the divorce was because she and Toby were
so young, and because Bridgett had cared for J.A.R. so much, it would be
reasonable to believe that if Toby was named primary managing conservator, his
mother would ultimately be caring for J.A.R.

Bridgett testified that she
was providing for J.A.R. until Toby became involved with Jana.  Prior to that time, Bridgett had been taking
care of J.A.R. day and night, because Jennifer was still in school and working
a full-time job and Toby was away with the military.  Bridgett testified that she saw things about
Jana she did not like, such as Jana force-feeding J.A.R., and she further
testified that she confronted Toby about it. 
Because Toby began limiting the amount of time that Bridgett has been
able to spend with J.A.R., Jennifer began to allow Bridgett to visit with
J.A.R. during her Wednesday night visitation period.  Jennifer testified that she thought Willie
and Bridgett should remain a part of J.A.R.=s life because they had always been there for J.A.R. in the past.








Jennifer called Toby=s ex-girlfriend, Randy M., to testify that she lived with Toby
following his divorce while he had custody of J.A.R.  Jennifer testified that she thought that it
was inappropriate from a morality standpoint for J.A.R. to witness women
sleeping at Toby=s
house.  On cross-examination, Randy
admitted that she had never changed her address with the post office or on her
driver=s license, although she did change her address with her employer to
reflect Toby=s
address.  Additionally, she testified
that she never paid rent, the phone bill, or insurance for Toby=s house, but she stayed over there every night of the week.  Toby testified that Randy never lived at his
house, but she did stay the night there. 
Jana admitted that she and Toby lived together prior to their marriage
and slept together in the same bed in the presence of J.A.R.  Jennifer acknowledged that Jose slept over at
her apartment before they were married, but denied that he ever stayed the
night there when J.A.R. was visiting.

Jennifer testified that she
and Toby do not have an open dialogue to communicate about their daughter, and
when Jennifer calls Toby=s house to
talk about J.A.R., she primarily speaks with Jana.  Jennifer further testified that Toby has
threatened her with withholding visitation of J.A.R.  Jennifer also has withheld visitation of
J.A.R., but she testified that J.A.R. stayed with her longer because she had
confusion with the language of the court order regarding holiday
visitation.  Toby and Jana testified that
when J.A.R. returned from Jennifer=s house, she was dirty and had not been bathed, but Jennifer testified
that she bathed J.A.R. every night that J.A.R. stayed at her house. 








The record reflects that
Bridgett contacted Child Protective Services (CPS) because she was concerned
for J.A.R.=s safety
after seeing curling iron burns on her ear and forehead.  J.A.R. was burned one morning while Jana was
curling her hair before school.  Jana
testified that she accidentally burned J.A.R. while curling her hair.  CPS ultimately dismissed the case after
taking a statement from J.A.R.

CPS investigated a second
incident, reported by Jennifer, involving a two-inch bruise on J.A.R.=s buttocks.  CPS  took a statement from Toby and J.A.R., and J.A.R.
advised CPS that James Jennifer=s father, had spanked J.A.R. with a belt.

The record also reflects
Bridgett and Jennifer;s concern over whether Toby=s home was the best environment in which to raise J.A.R.  Bridgett testified that she felt that J.A.R.
would be safe at Jennifer and Jose=s house, but she did not believe that J.A.R. would be safe at Toby=s house with Jana there because Bridgett believed Jana had a quick
temper.  Bridgett also testified that on
one occasion Jana ripped off J.A.R.=s shirt when J.A.R. stained the shirt with a drop of spaghetti sauce,
yelling that she had ruined the shirt. Bridgett expressed her concern that Jana
would not properly care for J.A.R.








Toby=s aunt, Donna C., testified that she had seen Jana lose her temper and
take her anger out on the child, saying she had seen Jana jerking the child
around.  Diana and Bridgett both
testified that they saw Jana stuffing food into J.A.R.=s mouth.  Diana testified that
she believed it would be in J.A.R.=s best interest to live with Jennifer, rather than Toby, because Jana
would not be a good mother to J.A.R. 
Diana testified that Jana was the primary disciplinarian of J.A.R., but
Jana testified that Toby was the primary disciplinarian.  Jana denied that she physically jerked J.A.R.
around and disputed claims that she had forced food into J.A.R.=s mouth, but did acknowledge that she had spanked J.A.R. on occasion. 

Bridgett and Donna both
testified that Jennifer had matured since the divorce.  Jennifer testified that if she were to be
named primary managing conservator, she would keep J.A.R. in contact with Toby=s extended family, and even offered to allow the child to visit the
Toby=s parents during her visitation periods.  Although J.A.R. would be required to attend a
school in a different school district, Jennifer planned on keeping J.A.R.=s schedule similar to her past schedule by enrolling her in day care
and continuing her soccer activities.








Toby and Jennifer disagree
about J.A.R.=s medical
condition.  Toby testified that J.A.R.
has severe bowel problems and gastroesophageal reflux.  Toby testified that if J.A.R. does not take
her medicine she becomes severely constipated. 
He further testified that when J.A.R. is in Jennifer=s care for a prolonged period of time, J.A.R. would be constipated
when she returned to Toby=s
house.  He testified that J.A.R. should
be on a consistent dosage.  Toby stated
he was concerned over J.A.R.=s condition because his uncle developed esophageal cancer from having
gastroesophageal reflux that was never treated. 

Although Toby testified that
he had some doubt as to whether Jennifer properly administered medication to
J.A.R., Jennifer testified that she gave the medication on an as-needed basis,
as prescribed by J.A.R=s
doctor.  Jennifer also testified that
Toby sometimes did not send the medication with J.A.R. when she would visit
Jennifer=s house.  Jennifer further
testified that she has taken J.A.R. to another doctor, and after running tests
on J.A.R., the doctor does not believe that J.A.R. had these problems.

3.  Material and Substantial Change








A court's determination as to
whether a material change of circumstances has occurred is not guided by rigid
rules and is fact‑specific.  In
re Z.B.P , 109 S.W.3d 772, 779 (Tex. App.CFort Worth 2003, no pet.). 
Evidence of a parent's subsequent marriage to another can constitute a
relevant, material change of circumstances after rendition of the decree sought
to be modified.  In re C.Q.T.M.,
25 S.W.3d 730, 735 (Tex. App.CWaco 2000, pet. denied). Examples of changes of conditions which have
been held to be material are (1) marriage of one of the parties (2) poisoning
of the mind of the child by one of the parents (3) one of the parties becoming
an improper person for the custody (4) changes in the home surroundings, and
(5) one of the parties becoming mean to the child.  Wright v. Wright, 610 S.W.2d 553, 555
(Tex. App.CHouston [1st
Dist.] 1980, no writ).  Additionally, Athe change in a child from a babe in arms or toddler to a school‑aged
child in itself is sufficient to show the material change necessary to support
modification.@  In re Davis, 30 S.W.3d 609, 614‑15
(Tex. App.CTexarkana
2000, no pet.).

Toby argues that the party
seeking modification of conservatorship must prove that a material and
substantial change occurred by presenting evidence establishing the conditions
that existed at the time of the original order and then must establish the change
in circumstances that are material and substantial since the rendition of the
order.  Toby argues that Jennifer never
established the material and substantial change in circumstances because
Jennifer never compared the conditions as they existed at the time of the
original custody order with the present conditions.  The method of showing this change is not
prescribed by the family code.  T.A.B.
v. W.L.B., 598 S.W.2d 936, 939 (Tex. App.CEl Paso 1980, writ ref=d n.r.e.), cert. denied, 454 U.S. 828 (1981).  Toby relies on Knowles v. Grimes, 437
S.W.2d 816 (Tex. 1969), and Bates v. Tesar, 81 S.W.3d 411 (Tex. App.CEl Paso 2002, no writ), to support his position, but neither case
mandates a particular method of proving the change in circumstances; therefore
neither supports Toby=s assertion.









At first glance, two other
cases appear to support Toby=s position but actually they do not. 
In Davis v. Duke, 537 S.W.2d 519, 521 (Tex. Civ. App.CAustin 1976, no writ), the court held that the appellant had failed to
prove the conditions that existed at the time of the entry of the custody
decree, but it also held that the appellant failed to prove the present
conditions; therefore, Davis does not support Toby=s contention, because the judgment could have been upheld on either
finding.  In Considine v. Considine,
726 S.W.2d 253, 255 (Tex. App.CAustin 1987, no writ), the court stated that A[t]o prove that a material change of circumstances has occurred, the
movant must demonstrate what conditions existed at the time of the entry of the
prior order.  Once such conditions have
been established, movant must show what material changes have occurred in the
intervening period.@  This is one method of showing material and
substantial change, but not the only method. 
T.A.B., 598 S.W.2d at 939. 
The requirement is that a change must be shown, and any method of proof
that shows a material and substantial change satisfies the statutory
requirement.  Id.








Additionally, it is plain in
the instant case that the conduct that is relied upon as showing a material
change in circumstances occurred subsequent to the decree sought to be
modified.  To show a material and
substantial change in circumstances, Jennifer relies in part on her remarriage
and the birth of J.A.R.=s
siblings.  She also relies on the fact
that Toby has also remarried and at the time of the modification hearing was
expecting a child with Jana.  Jennifer
argues that Toby and Jana have become mean to J.A.R.; therefore, Toby has
become an improper person for custody. 
She also points to the limited amount of time Toby has permitted J.A.R.
to spend with her paternal grandparents, Willie and Bridgett, since the time of
Toby=s remarriage.

We conclude that more than a
scintilla of evidence supports the trial court=s finding that the circumstances of both conservators have materially
and substantially changed.  Further,
after reviewing the record of the case, we cannot say that the evidence
supporting a finding that the circumstances of the conservators have materially
and substantially changed is so weak or the evidence to the contrary is so
overwhelming that the modification should be set aside and a new trial
ordered.  See Garza, 395 S.W.2d at
823.  The fact that a trial court may
decide a matter within its discretionary authority in a manner different from
an appellate court in similar circumstances does not demonstrate an abuse of
discretion.  We hold that the trial court
did not abuse its discretion in determining that the circumstances of the
conservators have materially and substantially changed.

 

 








4.  Best Interest of the Child

The family code does not
define the relevant factors to be considered when determining whether a
requested change is in the best interest of a child.  Texas courts have applied the nonexhaustive
list of Holley factors to determine the child=s best interest.  Holley v.
Adams, 544 S.W.2d 367, 371‑72 (Tex. 1976); T.D.C., 91 S.W.3d
at 873.  These factors include, but are
not limited to:  (1) the desires of the
child; (2) the emotional and physical needs of the child now and in the future;
(3) the emotional and physical danger to the child now and in the future; (4)
the parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals to promote the best interest of the
child; (6) the plans for the child by these individuals seeking custody; (7)
the stability of the home or proposed placement; (8) the acts or omissions of
the parent which may indicate that the existing parent-child relationship is
not a proper one; and (9) any excuse for the acts or omissions of the
parent.  Holley, 544 S.W.2d at 371‑72.  Furthermore, evidence regarding the conduct
and abilities of a new spouse can be relevant and admissible in a suit seeking
modification of conservatorship of a child, including issues of whether
modification of conservatorship would be in the best interest of the
child.  C.Q.T.M., 25 S.W.3d at
734.








Donna and Bridgett both
testified that Jennifer had matured since the divorce.  Although J.A.R. would be required to attend a
school in a different school district, Jennifer testified that she planned on
keeping J.A.R.=s schedule
similar to her past schedule by enrolling her in day care and continuing her
soccer activities.  Jennifer testified
that she plans to keep J.A.R. in contact with Toby=s extended family, and even offered to allow J.A.R. to visit Willie
and Bridgett during her visitation periods. 
Jennifer opined that her home was a much more stable environment than
Toby=s to raise J.A.R. because she has kept the same job, has not moved as
often as Toby, and her family has a constant routine that they follow daily. 

Diana testified that she did
not think it is in J.A.R.=s best
interest to have Jana be the disciplinarian of J.A.R..  Bridgett testified that she did not believe
that J.A.R. would be safe living with Toby and Jana because Jana has a quick
temper.  Bridgett expressed her concern
that if Jana was the one taking care of J.A.R., she would not be cared for
properly.








We conclude that there is
more than a scintilla of evidence to support the trial court=s finding that the modification of the divorce decree to appoint
Jennifer as primary managing conservator would be in the best interest of
J.A.R.  Furthermore, after reviewing the
record, we cannot say the evidence supporting the finding that appointing
Jennifer as primary managing conservator is in the best interest of the child
is so weak or the evidence to the contrary is so overwhelming that the answer should
be set aside and a new trial ordered.  Garza,
395 S.W.2d at 823.  The fact that a trial
court may decide a matter within its discretionary authority in a manner
different from an appellate court in similar circumstances does not constitute
an abuse of discretion.  We hold that the
trial court did not abuse its discretion in determining that appointing
Jennifer as primary managing conservator is in J.A.R.=s best interest.  We overrule
Toby=s three points.

CONCLUSION

Having overruled Toby=s three points, we affirm the judgment of the trial court.

PER
CURIAM

 

PANEL A:  HOLMAN, GARDNER, and McCOY, JJ.

 

DELIVERED:  October 27, 2005











[1]See Tex. R. App. P. 47.4.





[2]To
protect the privacy of the parties involved in this appeal, we identify the
child by initials only and Appellant and Appellee by their first name
only.  See Tex. Fam. Code Ann. ' 109.002(d) (Vernon 2002).





[3]See Tex. Fam. Code Ann. '' 153.137, 153.311-317 (Vernon 2002 & Supp. 2004-05). 





[4] See Tex. Fam. Code Ann.'
153.006 (Vernon 2002), '
153.134 (Vernon Supp. 2004-05). 
Throughout this opinion, the joint managing conservator with the
exclusive right to determine the child=s primary residence will be
referred to as the primary managing conservator.