

**NUMBER 13-08-00177-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

### IN THE MATTER OF D.K.B., A CHILD

**On appeal from the 25th District Court of Lavaca County, Texas.**

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion by Justice Garza

Appellant, Cassie Cumby, is the mother of D.K.B., a four-year-old child. In this appeal, Cumby challenges the trial court's order granting regular unsupervised visitation with D.K.B. to the child's paternal grandmother, Shirley Farrior. *See* TEX. FAM. CODE ANN. § 153.433 (Vernon 2008) (setting forth criteria for grandparent possession and access to a child). By a single issue, Cumby contends that the trial court abused its discretion. We reverse and render.

### I. BACKGROUND

D.K.B. was born in December of 2004, approximately two months after her father, T.B., died in an auto accident. On April 5, 2007, Farrior, T.B.'s mother, filed her original petition seeking grandparent visitation with D.K.B., arguing that "[d]enial of possession or access by [Farrior] will significantly impair the physical health or emotional well-being of the

child."[1]  After Cumby entered a general denial, the case proceeded to trial on July 24, 2007.

At trial, Farrior testified that she had a "good relationship" with D.K.B. from the time the child was born up until her second birthday.  Farrior stated that she and D.K.B. would visit with each other "usually monthly" during those two years but occasionally twice or three times per month.  On some occasions, Cumby would take D.K.B. to Farrior's house in Victoria, Texas, and on other occasions Farrior would travel to Cumby's house in Hallettsville, Texas, to visit D.K.B.  Cumby was present for all of the visits.  Farrior explained, however, that the visitation pattern began to change at some point after D.K.B.'s second birthday:

> A lot of the time, I would call, and she [Cumby] said she wouldn't be able to [take D.K.B. to visit], or she wouldn't call me back.  And I would call and leave a message; and when she did call me back, it was kind of iffy, kind of when she had time, which was fine with me.  But it—it just got to where I wasn't getting to see her a whole lot.

Farrior acknowledged that Cumby was concerned about Farrior's smoking cigarettes in the presence of D.K.B.; however, Farrior denied having smoked in D.K.B.'s presence and stated that she would agree to an order forbidding her to smoke in D.K.B.'s presence during her visits.

On cross examination, Cumby's counsel directed Farrior to a response Farrior gave to an interrogatory asking her to "[d]escribe fully each and every way that you believe or allege that Cassie Cumby is unfit to raise [D.K.B.] without your involvement."  Farrior's answer was:  "We do not think Cassie is unfit."  Farrior confirmed at trial that this was still her answer.  When asked if "Cassie's been a good mom to [D.K.B.]," Farrior responded, "Yes, as far as I—I know.  I'm sure she is."  Cumby's counsel continued:

Q.         And she [Cumby] has—she has, within her schedule,

---

[1] The petition was filed jointly by Farrior and her husband James Farrior.  James, who was not T.B.'s biological or adoptive father, was later removed as a party to the suit.  *See* TEX. FAM. CODE ANN. § 153.433(3) (Vernon 2008) (providing that grandparent possession or access may only be granted if, *inter alia*, "the grandparent requesting possession of or access to the child is a parent of a parent of the child").

2

accommodated your wishes and desires to see [D.K.B.] very regularly over [D.K.B.]'s life, correct?

A. [Farrior]     Yes.

Q.     And in fact, your real problem with what—with the kind of visitation you were getting with [D.K.B.] was that Cassie wouldn't leave [D.K.B.] at your house without her being there, correct?

A.     Correct.

On re-direct examination, Farrior agreed that she would be willing to initially do "a series of visits with the mother's presence," but that she eventually wished to visit with D.K.B. unsupervised by Cumby. Farrior's counsel also asked:

Q.     [U]ntil recently, you and the mother [Cumby] have actually gotten along pretty well; is that correct?

A. [Farrior]     Yes, that's true.

Q.     And you're not in any way, form or fashion saying that she's a bad mother, are you?

A.     No. She's a good mother.

Q.     Okay. And you believe it's important for the child to know your family and the extended family that she has . . . from her father.

A.     Yes.

Cumby's counsel then inquired on re-cross examination of Farrior whether there was "any reason that the child can't know your family and your extended family through Cassie and letting Cassie decide when those visits happen?" Farrior answered, "That would be fine." Farrior also admitted that, as of the time of trial, she had not contacted Cumby seeking visitation with D.K.B. in the nearly four months since she filed her petition for grandparent visitation in April of 2007.

Cumby testified that she has never said "no" to a request by Farrior to visit with D.K.B. Cumby did state that there were times where she could not accommodate Farrior's specific request to visit with D.K.B. at a particular time but that "we worked around it" and

"[w]e always scheduled the next visit." Cumby stated that she had at times contacted Farrior herself to arrange Farrior's visits with D.K.B. but that she no longer did so. According to Cumby, "[w]hen the calls became less frequent, for her [Farrior] calling me to visit with my daughter, I felt that that was fine with me, so I didn't urge them to have any more—to keep calling." Cumby stated that Farrior eventually asked to have unsupervised visits with D.K.B. Cumby testified that she responded to Farrior's request by saying "[t]hat I was not comfortable with [unsupervised visits]. That I drive 45 miles to let her visit with my daughter, and I felt that I should be there in her care, be able to supervise her actions." Cumby further testified that she has observed Farrior smoke cigarettes in the presence of D.K.B. and that she has "had to remind [Farrior] repeatedly not to smoke around [D.K.B.]."[2]

At the conclusion of the trial, the trial court pronounced its ruling granting Farrior's petition. A written order was entered on August 23, 2007, which included the following findings:

1. SHIRLEY FARRIOR and [D.K.B.] have a relationship which has been fostered by CASSIE CUMBY.

2. The love and affection which exists between [D.K.B.] and SHIRLEY FARRIOR is mutual.

3. The removal of [D.K.B.]'s relationship with SHIRLEY FARRIOR would be harmful to the child.

4. There is no reasonable chance that the relationship between [D.K.B.] and SHIRLEY FARRIOR would be maintained without a court order.

The order provided that Farrior would have possession and access to D.K.B. for one weekend day per month until the time D.K.B. reached three years of age, at which point the visits would extend to one weekend per month, including one overnight period. The order also specifically enjoined Farrior from smoking in D.K.B.'s presence or allowing

---

[2] When asked by her counsel why she did not want anyone smoking around her daughter, Cumby stated: "[D.K.B.] was born with complications. She couldn't breathe on her own. She could only breath[e] 30 percent on her own. And she has other complications and the doctor, he prohibited it."

4

anyone else to smoke in her presence.  This appeal followed.[3]

## II. APPLICABLE LAW

Section 153.433 of the Texas Family Code, entitled "Possession of or Access to Grandchild," provides as follows:

> The court shall order reasonable possession of or access to a grandchild by a grandparent if:
>
> (1)    at the time the relief is requested, at least one biological or adoptive parent of the child has not had that parent's parental rights terminated;
>
> (2)    the grandparent requesting possession of or access to the child overcomes the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being; and
>
> (3)    the grandparent requesting possession of or access to the child is a parent of a parent of the child and that parent of the child:
>
> > (A)    has been incarcerated in jail or prison during the three-month period preceding the filing of the petition;
> >
> > (B)    has been found by a court to be incompetent;
> >
> > (C)    is dead; or
> >
> > (D)    does not have actual or court-ordered possession of or access to the child.

---

[3] On September 5, 2007, Cumby filed a petition for writ of mandamus with this Court, which we denied by memorandum opinion after initially granting a stay of the trial court proceedings. *In re Cumby*, No. 13-07-00538-CV, 2007 Tex. App. LEXIS 8268, at *1 (Tex. App.–Corpus Christi Oct. 15, 2007, orig. proceeding) (mem. op.). Cumby then petitioned the Texas Supreme Court for a writ of mandamus on October 26, 2007.  After staying the trial court proceedings and requesting full briefing, the Court denied the petition on March 28, 2008.

After Cumby filed the instant appeal on April 3, 2008, we initially dismissed it for lack of jurisdiction. *In re D.K.B.*, No. 13-08-00177-CV, 2008 Tex. App. LEXIS 3317, at *1-5 (Tex. App.–Corpus Christi May 8, 2008, no pet.) (mem. op.) (noting that Cumby's notice of appeal was filed more than thirty days after the challenged judgment was signed); *see* Tex. R. App. P. 26.1.  However, we subsequently granted Cumby's motion for rehearing and withdrew the earlier opinion dismissing the appeal, noting that the court-imposed stays arguably tolled the time limit for filing a notice of appeal. *See Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex. 1997) ("[A]ppellate courts should not dismiss an appeal for a procedural defect whenever any arguable interpretation of the Rules of Appellate Procedure would preserve the appeal.").

Cumby also filed a motion with this Court seeking to suspend the enforcement of the visitation order during the pendency of this appeal; we denied the motion on April 17, 2008.

TEX. FAM. CODE ANN. § 153.433 (Vernon 2008).

### III. STANDARD OF REVIEW

We apply an abuse of discretion standard in reviewing a trial court's determination of grandparent access or possession under section 153.433. *In re J.P.C.*, 261 S.W.3d 334, 335-36 (Tex. App.–Fort Worth 2008, no pet.); *see also In re Marriage of Campbell*, No. 06-08-00088-CV, 2009 Tex. App. LEXIS 1407, at *6 (Tex. App.–Texarkana Feb. 27, 2009, no pet.) (mem. op.). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without reference to any guiding rules or principles. *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.–Austin 2005, pet. denied). Although the grandparent access statute does not specifically include a best interest analysis, section 153.002 of the family code dictates that the best interests of the child shall always be the primary consideration when determining conservatorship, possession, and access issues. TEX. FAM. CODE ANN. § 153.002 (Vernon 2008); *J.P.C.*, 261 S.W.3d at 336. A trial court is given "wide latitude in determining the best interests of a minor child." *Stallworth v. Stallworth*, 201 S.W.3d 338, 347 (Tex. App.–Dallas 2006, no pet.) (quoting *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)).

An abuse of discretion does not occur if some evidence of substantive and probative character exists to support the trial court's decision. *J.P.C.*, 261 S.W.3d at 336. However, a trial court has no discretion in determining what the law is or applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). Therefore, discretion is abused when the court grants access to a grandparent who fails to meet the statutory requirements of section 153.433. *J.P.C.*, 261 S.W.3d at 336; *see In re B.N.S.*, 247 S.W.3d 807, 808 (Tex. App.–Dallas 2008, no pet.); *see also In re Marriage of Campbell*, 2009 Tex. App. LEXIS 1407, at *7.

### IV. ANALYSIS

It is undisputed that the requirements of subsections (1) and (3) of the grandparent

access statute were met because Cumby's parental rights were not terminated and T.B., D.K.B.'s father and Farrior's son, was deceased at the time Farrior's petition was filed. *See* TEX. FAM. CODE ANN. § 153.433(1), (3)(C). Therefore, the only question before us is whether or not the trial court abused its discretion in determining that Farrior satisfied subsection (2) of the statute.

Cumby's central argument is that the evidence adduced at trial was factually and legally insufficient to support the trial court's order.[4] In reviewing a possession order under an abuse of discretion standard, legal and factual sufficiency are not independent grounds of error, but are relevant factors in determining whether the trial court abused its discretion. *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.–Fort Worth 2002, pet. denied). In determining whether an abuse of discretion has occurred because the evidence is legally or factually insufficient to support the trial court's decision, we must inquire: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Id.* (citing *In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.–Houston [14th Dist.] 2002, no pet.); *Norris v. Norris*, 56 S.W.3d 333, 338 (Tex. App.–El Paso 2001, no pet.); *Lindsey v. Lindsey*, 965 S.W.2d 589, 592 (Tex. App.–El Paso 1998, no pet.)). "The traditional sufficiency review comes into play with regard to the first question. We then proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision." *Id.* (internal citations omitted). Cumby does not argue that the trial court lacked sufficient information upon which to exercise its discretion; accordingly, our analysis turns on whether the trial court made a reasonable decision based on the elicited evidence. *Id.*

---

[4] Cumby also contends that the trial court erred by rendering its order without including a specific finding that denial of visitation to Farrior "would significantly impair the child's physical health or emotional well-being," as stated in the grandparent access statute. *See* TEX. FAM. CODE ANN. § 153.433(2). According to Cumby, the findings are therefore insufficient as a matter of law to support an order of grandparent access. Farrior responds by noting correctly that the statute does not explicitly require the trial court to make written findings of fact in accordance with the statute's language in order for grandparent access to be awarded. We need not address the issue as, even assuming the trial court's findings of fact were sufficient as a matter of law to support a possession order under section 153.433, we find that the evidence was insufficient to support such an order. *See* TEX. R. APP. P. 47.1.

We begin our analysis by noting that the grandparent access statute, as it exists today, is the product of significant amendments made in response to the United States Supreme Court's opinion in *Troxel v. Granville*, 530 U.S. 57, 67 (2000). In *Troxel*, the Court considered the constitutionality of a Washington statute permitting "any person" to petition a trial court for a visitation order and authorizing the court to grant such an order whenever "visitation may serve the best interest of the child." *Id.* at 60. In a plurality opinion, the Court found that the statute, as applied, infringed upon the "fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Id.* at 66-67; *see* U.S. CONST. amend. XIV. The plurality reasoned in part as follows:

> [The statute] contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn *any* decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests.

*Troxel*, 530 U.S. at 67 (emphasis in original). In 2005, the Texas Legislature amended the grandparent access statute—which had previously required only that grandparent access be in the best interest of the child—to clarify that the trial court must presume that a parent acts in the best interest of the parent's child, and that an applicant grandparent must overcome that presumption in order to obtain a possession order. *See* Act of Apr. 29, 2005, 79th Leg., R.S., ch. 484, § 4, 2005 TEX. SESS. LAW SERV. 1346, 1346-47 (Vernon).

Cumby argues that Farrior presented no evidence specifically rebutting the mandated presumption that Cumby would act in D.K.B.'s best interests in determining when and how D.K.B. would interact with her paternal grandmother. At trial, Cumby testified succinctly as to her position: "It's not that I do not want [D.K.B.] around Ms. Farrior. I just believe that, as a mother, I should be able to decide when she should be able to be around her; and if I want to be there, that I should be able to be there." We

8

agree.

In a similar case, the Texas Supreme Court granted mandamus relief to a parent who objected to a grandparent access order. *In re Mays-Hooper*, 189 S.W.3d 777, 778 (Tex. 2006) (orig. proceeding). There, the Court determined that the trial court abused its discretion by ordering grandparent visitation where "there was no evidence that the child's mother was unfit, no evidence that the [child]'s health or emotional well-being would suffer if the court deferred to [the mother's] decisions, and no evidence that [the mother] intended to exclude [the paternal grandmother's] access completely." *Id.* The same analysis holds in the instant case. There was no evidence presented at trial that Cumby is an unfit mother or that she would have completely denied Farrior's access to D.K.B. In fact, Farrior's own testimony established that Cumby is a fit parent and that Cumby had facilitated Farrior's visits with D.K.B. in the past. Moreover, Farrior admitted at trial that her main objective in filing suit was to have unsupervised visits with D.K.B., but Farrior did not produce any evidence indicating that D.K.B.'s physical health or emotional well-being would be significantly impaired if Farrior continued to have visits with D.K.B. supervised by Cumby, as was Cumby's preference. Without any such evidence, the trial court had no discretion to disregard Cumby's decisions regarding when and under what circumstances Farrior may visit with D.K.B. *See Troxel*, 530 U.S. at 67; *Mays-Hooper*, 189 S.W.3d at 778 (finding that the trial court abused its discretion in awarding grandparent visitation in part because there was "no evidence that the [child]'s health or emotional well-being would suffer if the court deferred to [the mother's] decisions").

Further, because there was no evidence indicating that Cumby would significantly restrict Farrior's access to D.K.B. in the absence of court intervention, it was an abuse of discretion for the trial court to have found that a court order was reasonably necessary in

order to maintain the child's relationship with her paternal grandmother.[5]

We conclude that Farrior did not satisfy the requirement of section 153.433(2) of the family code because she failed to overcome the presumption that Cumby would act in D.K.B.'s best interests.  *See* TEX. FAM. CODE ANN. § 153.433(2); *Troxel*, 530 U.S. at 67; *J.P.C.*, 261 S.W.3d at 336; *Mays-Hooper*, 189 S.W.3d at 778.  Accordingly, the trial court abused its discretion by granting Farrior's petition.  Cumby's issue is sustained.

## V.  CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court and render judgment denying Farrior's petition for grandparent access in its entirety.

_____
DORI CONTRERAS GARZA,
Justice

Memorandum Opinion delivered and
filed this the 13th day of August, 2009.

_____

[5] Farrior notes the following in her appellate brief:

> Twenty months have passed since the court issued the complained[-]of Order.  *It is reasonable to assume that during that time a significant amount of bonding has occurred between [D.K.B.] and [Farrior], as well as between [D.K.B.] and her paternal relatives* . . . . Should the Court reverse the Order, it should be done without prejudice to allow [Farrior] to re-urge her request for visitation and present evidence regarding [D.K.B.]'s current emotional connection to [Farrior].

(Emphasis added.)

We note that our decision today is predicated on the following facts:  (1) that the uncontroverted evidence showed that Cumby had not, at any time prior to trial, completely denied Farrior access to D.K.B; and (2) that there was no evidence produced at trial indicating that Cumby would so deny Farrior's access going forward.  We recognize that the specific circumstances surrounding D.K.B.'s case—including D.K.B's relationship with her grandmother and paternal relatives, and the relationship between Cumby and Farrior—may well have significantly changed since the time of trial.  However, it is elementary that we may not consider assumptions—such as those made by Farrior here—that are not supported by evidence in the record before us.

Nevertheless, we emphasize that nothing in our opinion today precludes Farrior from filing a subsequent petition for visitation should circumstances change such that Cumby is no longer acting in the best interests of D.K.B. by fostering D.K.B.'s relationship with Farrior.  *See* TEX. FAM. CODE ANN. § 153.433(2); *see also id.* § 153.432(a)(2) (Vernon 2008) (providing that a biological or adoptive grandparent may request possession of or access to a grandchild by filing a suit for modification as provided by Chapter 156); § 156.101 (Vernon 2008) (providing that the court may modify a possession order if, among other things, circumstances have "materially and substantially changed" since the date of the order and the modification would be in the best interest of the child).