

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-16-00473-CV

IN THE INTEREST OF D.M., M.M.,
AND M.M., CHILDREN

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 323-101474-15

----------

## MEMORANDUM OPINION[1]

----------

In this accelerated appeal, Appellants primarily argue that the evidence was insufficient to support the trial court's order naming the Texas Department of Family and Protective Services (DFPS) as their three children's sole managing conservator and denying Appellants their request to be named managing conservators. The family code requires a trial court to consider a history of family

---

[1]*See* Tex. R. App. P. 47.4.

violence in making a managing-conservator decision. Because the trial court heard a preponderance of credible evidence that Appellants had a past history of family violence, the trial court did not abuse its discretion by appointing DFPS the children's sole managing conservator. Therefore, we affirm the trial court's final order. *See* Tex. R. App. P. 43.2(a).

## I. MANAGING CONSERVATORSHIP

Appellants A.M. (Father) and K.M. (Mother) appeal from the trial court's final order in a suit affecting their parent-child relationship (SAPCR) to three of their four children, D.M. (David), Ma. M. (Mandy), and Me. M. (Michelle) (collectively, the children). Father and Mother argue that the evidence was legally and factually insufficient to support the trial court's finding that their joint managing conservatorship or a monitored return would significantly impair the children's physical health or emotional development and, thus, would not be in the children's best interest. We review this determination for an abuse of discretion. *See In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g). Our review of the trial court's discretion includes a parsing of the sufficiency of the evidence to support the conservatorship, possession, and access determinations. *See In re M.A.M.*, 346 S.W.3d 10, 13–14 (Tex. App.—Dallas 2011, pet. denied).

## A. FACTORS TO BE CONSIDERED

A child's best interest is a trial court's primary concern in determining conservatorship, possession, and access. *See* Tex. Fam. Code Ann. § 153.002 (West 2014). In making this best-interest determination, the trial court is guided by several nonexclusive factors, some of which are whether the parents are willing and able to provide the children with a safe environment, the present and future needs of the children, the present and future danger to the children's emotional or physical needs, the children's stability, and the need to prevent constant litigation in child-custody cases. *See id.* § 263.307 (West Supp. 2016); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re Marriage of Bertram*, 981 S.W.2d 820, 822–23 (Tex. App.—Texarkana 1998, no pet.).

A trial court presumes that it is in a child's best interest for a parent to be appointed sole managing conservator or for both parents to be appointed joint managing conservators. *See* Tex. Fam. Code Ann. § 153.131 (West 2014). But this best-interest presumption is rebutted by evidence that such appointment would cause a significant impairment of the children's physical health or emotional development. *See id.* § 153.131(a). And the presumption is completely "remove[d]" if the trial court finds credible evidence of "a history of family violence involving the parents of a child." *Id.* § 153.131(b); *see id.* § 153.004(a)–(b) (West 2014). Credible evidence of such a history absolutely prohibits the appointment of the parents as joint managing conservators. *See id.* § 153.004(b). Similarly, a trial court must deny a parent access to a child if a

3

preponderance of the evidence reveals a history or pattern of family violence during the two years before the SAPCR was filed. *See id.* § 153.004(d).

### B. EVIDENCE REGARDING CONSERVATORSHIP FACTORS

Mother and Father married on June 18, 1998. On July 6, 1998, their first child K.M. (Kayla) was born, and David soon followed on June 15, 2000. In 2007, when Kayla and David were eight and six, Mother and Father began using methamphetamine, sometimes daily and while the children were in the house. That same year, Mother was diagnosed with bipolar disorder and attempted suicide six times, in one instance telling Father that she wanted "the children to know that [Father was] at fault" for her suicide. Because Father was concerned Mother would harm the children, he got a protective order against her that prevented her from having unsupervised contact with the children. Mother violated the order and was arrested and eventually placed on deferred adjudication community supervision, which she successfully served.

While Father had custody of the children after the protective order, DFPS received a report of neglectful supervision of Kayla and David, which alleged that Father was using methamphetamine, was "agitated and volatile," and wanted to "get rid" of people who were "after him." DFPS could not determine if there was reason to believe the report because Father refused to complete a drug test and the investigator could not get in contact with him. Father kept the children for approximately one year before reuniting with Mother.

4

Mandy was born on December 16, 2010. Mother and Father continued to use methamphetamine daily with brief periods of sobriety. In December 2013, Father pushed Mother, who was pregnant, during an argument and put her in a choke hold. Mother freed herself by biting him. Mother was arrested and placed on deferred adjudication community supervision for assault, which she successfully served. Michelle was born January 14, 2014. In September 2014, Father was arrested after he hit Mother in the face, pulled her hair, and pushed David after David stepped between them. Father was convicted of assault causing bodily injury to a family member.

By this point, Mother and Father still were using methamphetamine daily while the children were in the home. Father, a paranoid schizophrenic, began to believe the police were listening to him through the electronics in his home, thought the police were drugging him, and had auditory hallucinations. Mother had stopped taking her medication for her bipolar disorder. On February 27, 2015, Father and Mother voluntarily went to DFPS to get help for their drug addiction and mental-health issues. On March 5, 2015, DFPS filed a SAPCR and sought the emergency removal of the children after Mother and Father tested positive for methamphetamine and amphetamine and failed to appear for a scheduled meeting with DFPS.[2] On March 13, 2015, the trial court ordered the

_____

[2]Although Kayla originally was included in the SAPCR, she had reached the age of eighteen at the time of the trial court's final hearing. *See* Tex. Fam. Code Ann. § 101.003 (West 2014).

5

children's removal, appointed DFPS temporary managing conservator of the children, and granted Father and Mother limited access to the children. When Mandy and Michelle were removed, they tested positive for methamphetamine.[3]

After the children were removed, Father hit Mother and tried to choke her in March 2015, leading to his second conviction for assault causing bodily injury to a family member. Mother entered an in-patient rehabilitation facility in March 2015 and stayed for twenty-eight days with four months of out-patient treatment, including Narcotics Anonymous meetings. This treatment ended in August 2015. During Mother's out-patient treatment in July 2015, Father and Mother got in a verbal argument and separated. The fight arose because Mother continued to use drugs and Father realized that her drug dealer still regularly contacted her.

After DFPS moved to modify possessory conservatorship, the trial court entered a temporary order that continued DFPS's temporary managing conservatorship but appointed Mother's sister K.K. (Aunt) and Aunt's husband J.K. (Uncle) to be Kayla, Mandy, and Michelle's temporary possessory conservators. At the time of the hearing, Father believed the children should be with family in California, where Aunt and Uncle lived. David had testified at the hearing that he wanted to stay in foster care near his school; therefore, he remained in foster care and did not move to California with Kayla, Mandy, and Michelle. Two months later in February 2016, Father and Mother moved to a

---

[3]Mother stated she did not know how they could have gotten methamphetamine in their systems.

halfway house in Abilene after Mother had again deteriorated to daily methamphetamine use. Father and Mother made progress at the halfway house and stopped taking methamphetamine in that controlled environment. On July 13, 2016, while Father and Mother were still at the halfway house, they filed a joint motion for the monitored return of the children, requested temporary possessory conservatorship of the children, and requested an extension of the dismissal date. *See* Tex. Fam. Code Ann. § 263.403 (West 2014).

The trial court held a hearing on DFPS's motion to modify and Father and Mother's motion for monitored return on July 18, 2016. Father and Mother intended to find an apartment in Waxahachie suitable for their children as soon as they were released from the halfway house, which would occur in August 2016. A DFPS conservatorship supervisor, Tyra Sasita, testified that since March 2015, Father and Mother had not shown that they could provide stability for the children. She further stated that a monitored returned would not be appropriate until after Father and Mother could make such a showing, which was not possible at the halfway house because it was a highly controlled environment. Staci Willingham, Father and Mother's DFPS caseworker after they moved to Abilene, stated that they appeared to be ready to get the children back after they secured appropriate housing; however, Sasita pointed out that Willingham had seen Father and Mother only at their best in a controlled environment. Sasita testified that DFPS requested that it be named managing conservator of the children and that Aunt and Uncle be given possessory

7

conservatorship of Mandy and Michelle.[4]  Aunt testified that on July 11, 2016, seven days before the trial court's scheduled hearing, Mother called Aunt and was very angry because Aunt had not toilet trained Michelle and because Aunt would not tell Mother exactly how she planned to testify at the hearing.  Mother's anger toward Aunt was commonplace, and she regularly directed this anger at Kayla during their phone conversations.  Aunt testified to the improvements shown by Mandy and Michelle in the seven months they had lived with her and to her specific plans for all of the children, including Kayla.[5]  David stated in a letter that his first choice would be to "go home to my parents" because he believed they "have changed and will never go back to their addiction."  His second choice was to be with Aunt, and his final choice was to stay in foster care because "if all else fails I have them."  At the end of the hearing, the trial court deferred its ruling until the required notification to the American Indian tribes was completed.[6]  *See* 25 U.S.C.A. §§ 1911–12 (West 2013).

---

[4]Sasita explained that Aunt and Uncle could not be given possessory rights to David because he had not been living with them before the hearing.

[5]At the time of the hearing, Kayla was eighteen and planned to attend Arizona State University where Aunt's son—Kayla's cousin—also attended and where Kayla had many relatives in the area.  Before the removal, Kayla had not considered attending a four-year university.

[6]Mother had indicated to a DFPS investigator that Father was of American Indian descent, but DFPS had not heard from all tribes about their intent to intervene.  After no tribe intervened, the trial court made its findings based on the evidence adduced at the July 2016 hearing.

On August 15, 2016, Mother filed a motion to reopen the evidence because she and Father had rented a house in Abilene, which was sufficient to provide appropriate housing for the children. She further requested that the September 3, 2016 dismissal date, which was an extension from the original dismissal date, be further extended for "not longer than 180 days." *See* Tex. Fam. Code Ann. § 263.401 (West Supp. 2016). On September 13, 2016, the trial court held a hearing on this motion, and Mother testified that she and Father had rented a two-bedroom home in Abilene. The trial court stated that it would "take that evidence into consideration," implicitly granting the motion to reopen.

On December 20, 2016, the trial court entered its final order appointing DFPS managing conservator of the children, specifically finding that appointment of Father or Mother as managing conservator of the children would significantly impair their physical health or emotional development and that it would not be in their best interest to appoint a relative managing conservator.[7] *See id.* § 263.404(a) (West Supp. 2016). The trial court appointed Father and Mother possessory conservators of the children but without the right to physical possession of the children and with only supervised visitation. Aunt and Uncle were appointed possessory conservators of Mandy and Michelle with the right to physical possession. In its final order, the trial court dismissed DFPS's SAPCR without prejudice.

---

[7]These determinations operated to implicitly deny Father and Mother's joint motion for a monitored return filed before the July 2016 hearing.

9

## C. No Abuse of Discretion

Father and Mother assert that the evidence was insufficient to support the trial court's conservatorship determinations. Mother specifically argues that the evidence did not support the best-interest finding based on significant impairment and that the evidence showed that she and Father were able to provide the children with a safe environment.[8]  *See id.* §§ 153.131(a), 263.307(b)(12)(D), 263.403(a)(1).  Father similarly argues that the trial court's conservatorship determinations were an abuse of discretion because the evidence failed to sufficiently show significant impairment and, thus, to show that the trial court acted in the children's best interest.  *See id.* § 153.131(a).

But what Father and Mother wholly fail to address is the effect of their undisputed history of family violence, occurring within two years of DFPS's SAPCR, on their conservatorship, possession, and access requests.  Father and Mother's history of family violence alone justified the trial court's determination. *See id.* § 153.004(b).  Further, they focus on only two of the nonexclusive factors in urging the trial court abused its discretion:  their willingness and ability to

---

[8]Mother also seems to argue that the trial court erred by denying her request for an extension of the dismissal date, which was included in her and Father's motion for a monitored return.  But Mother's arguments are directed solely to the trial court's action in determining conservatorship and she has not included any argument or citation to authority specifically directed to the continuance ruling, thereby waiving this complaint.  *See In re T.T.F.*, 331 S.W.3d 461, 477–78 (Tex. App.—Fort Worth 2010, no pet.).  Even so and as DFPS points out, the trial court was prohibited from further extending the dismissal date because a prior 180-day extension had been granted.  *See* Tex. Fam. Code Ann. § 263.401(b).

provide stable housing and the lack of evidence that their conservatorship would cause the children significant impairment. This analysis improperly ignores the other statutory and common-law factors that could have been considered by the trial court in determining the children's best interest. *See In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.). Father's and Mother's chronic history of substance abuse, some of which occurred in front of the children and resulted in Mandy and Michelle testing positive for methamphetamine at removal; Father's and Mother's frequent relapses over an eight-year period; their inability to protect the children from repeated exposure to family violence; and the children's stability since removal all support the trial court's final order. *See* Tex. Fam. Code Ann. § 263.307(a), (b)(7)–(8), (b)(12)(E); *see, e.g.*, *In re K.S.*, 492 S.W.3d 419, 427–28 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). *See generally Gillespie*, 644 S.W.2d at 451 (stating trial court possesses wide latitude in determining best interest).

## II. CONCLUSION

Under these facts, we cannot conclude that the trial court abused its discretion in making its conservatorship, possession, and access determinations. Evidence regarding several of the nonexclusive factors relevant to a best-interest finding supported the trial court's determination that the appointment of Father and Mother as managing conservators or a monitored return would not be in the children's best interest. As such, the trial court did not abuse its discretion. We

11

overrule Father's and Mother's issues and affirm the trial court's final order.  *See*

Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  WALKER, MEIER, and GABRIEL, JJ.

DELIVERED:  March 30, 2017